[No. 20723-1-II. Division Two. February 6, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JONATHAN ALLEN TAYLOR, *Appellant*.

*Linda J. King*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

SEINFELD, J. — Jonathan Taylor appeals his convictions for second degree assault and second degree kidnapping.

He seeks vacation of the assault conviction, claiming double jeopardy and merger doctrine violations. He also seeks resentencing of the kidnapping conviction, claiming error in imposing a deadly weapons enhancement and in calculating the offender score. We affirm the convictions but find sentencing error. Thus, we remand for resentencing.

## FACTS

One evening in November 1995, Chris Weiler stopped at a convenience store parking lot to buy gasoline. Also in the car was Rodney Murphy. As Weiler exited his car, Taylor came over and hit Weiler in the face, knocking him back into the driver's seat. Taylor then pulled out a .22 rifle and aimed it at Weiler's head.

At this point, Michael Nicholson joined Taylor. Together they reached into the vehicle, unlocked the back doors, and got into the backseat. Before entering the vehicle, Nicholson took the gun from Taylor and loaded it. Once inside, Nicholson aimed the gun at Murphy's head and ordered Weiler to drive to Oakland Park.

At the park, Nicholson ordered Murphy to take off his coat and empty his pockets. At the same time, Taylor restrained Weiler "[b]y pushing [his] face forward."

After taking Murphy's coat, hat, and pocketknife, Taylor and Nicholson left the car and crossed the street. As Weiler began to drive off, he heard gunshots and several bullets hit the passenger side of the car. Neither victim saw who fired the gun. The police apprehended Taylor later that evening.

The State charged Taylor with kidnapping and assaulting Murphy and Weiler, robbing Murphy, and possessing a firearm. The two charges at issue are:

Count II: Second Degree Assault of Rodney Murphy, RCW 9A.36.021(1)(c).

Count V: First Degree Kidnapping of Rodney Murphy, RCW 9A.40.020(1)(b).

In addition, the State sought a deadly weapon sentence enhancement for Counts II and V.

At trial, Taylor moved to have the State elect as the act it was relying upon for the assault charge: either (a) accomplice liability for Nicholson's pointing of the gun at Murphy's head during the kidnapping, or (b) the firing of the gun at the car as it drove away. The State insisted that the jury could convict for either incident provided they were unanimous as to the specific incident. The trial court agreed, denied Taylor's motion, and later instructed the jury as follows:

> There are allegations that the defendant committed acts of assault with a deadly weapon against Rodney Murphy on multiple occasions. These occasions include pointing a weapon at Rodney Murphy [as an accomplice to Nicholson during the kidnapping] and firing a weapon at Rodney Murphy [as either an accomplice or a principal as Murphy and Weiler left the scene]. To convict the defendant, one or more particular acts must be proved beyond a reasonable doubt and you must unanimously agree as to which act or acts have been proved beyond a reasonable doubt. You need not unanimously agree that all the acts have been proved beyond a reasonable doubt.

The jury convicted Taylor of the second degree assault of Murphy and the second degree kidnapping of Murphy and Weiler. It also found that Taylor was armed with a deadly weapon when he committed the offenses against Murphy. At sentencing, the trial court determined that Taylor had a total offender score of six. It imposed a 113-month sentence, which included two consecutive 36-month weapon enhancements.

On appeal, Taylor maintains that the jury based the kidnapping and assault convictions against Murphy on the same criminal conduct. Accordingly, he argues that (1) the convictions violate double jeopardy, (2) the Legislature intended the two offenses to merge, and (3) the convictions constitute the same criminal conduct for sentencing purposes. He also complains that he did not receive ade-

quate notice that the State was seeking a special weapons enhancement for the lesser degree kidnapping offense.

## ANALYSIS

■ The jury unanimously concluded that Taylor was guilty of assaulting Murphy, but the verdict did not indicate which assaultive incident the jury was relying upon to find guilt—incident (a), Taylor's accomplice liability for Nicholson's conduct in pointing the gun during the kidnapping, or incident (b), the shooting of the gun at the car.[1] Because there was sufficient evidence supporting either alternative, this ambiguity does not invalidate the conviction. *State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988) (unanimity not required as to means by which crime committed if substantial evidence supports each alternative means).

■ But Taylor bases his arguments on an understanding that incident (a), the assault during the kidnapping, is the offense under consideration. Under these circumstances, principles of lenity require this court to interpret the ambiguity in favor of the criminal defendant. *Cf. City of Bellevue v. Hard*, 84 Wn. App. 453, 458, 928 P.2d 452 (1996) (rule of lenity requires interpretation of ambiguous statutes in favor of criminal defendant); *see United States v. Baker*, 16 F.3d 854, 857-58 (8th Cir. 1994) (when imposing sentence based upon ambiguous verdict susceptible of two interpretations, court may not impose alternative producing higher sentencing range); *State v. Garcia*, 65 Wn. App. 681, 691, 829 P.2d 241 (1992) (reversal and remand for retrial necessary when jury instructions make no distinction between validly charged criminal conduct and conduct for which conviction is constitutionally barred). Thus, for purposes of our analysis, we consider that the assault conviction was based upon incident (a).

## DOUBLE JEOPARDY

■ Contending that the assault and kidnapping convic-

---

[1]At oral argument, the State conceded this ambiguity.

tions share the same legal and factual basis, Taylor claims a double jeopardy violation. The double jeopardy clauses of the state and federal constitutions prohibit multiple prosecutions and multiple punishments for the same criminal offense. *State v. McJimpson*, 79 Wn. App. 164, 167, 901 P.2d 354 (1995). In Washington, a defendant is subject to double jeopardy if convicted of two or more offenses that are identical in law and in fact. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). When there is an element in one offense not included in the other, and proof of one offense would not necessarily prove the other, the double jeopardy clause does not bar convictions for both offenses. *Calle*, 125 Wn.2d at 777.

To determine whether the offenses are legally identical, we first compare the elements of each crime. Second degree assault, an assault with a deadly weapon, may be committed three ways: "(1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [actual battery]; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm [common-law assault]." *State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994); RCW 9A.36.021(1)(c). The third alternative is applicable here.

A defendant commits second degree kidnapping by intentionally abducting another under circumstances that do not constitute first degree kidnapping, i.e., not to recover a ransom or reward, facilitate a felony, inflict bodily injury on the victim, inflict extreme emotional distress, or interfere with any governmental function. RCW 9A.40.020, .030. Abduct means "to restrain a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(2). Subsection (b) is at issue here.

Assault with a deadly weapon does not contain the same legal elements as kidnapping by the use or threatened use of deadly force. One can kidnap a victim using deadly force by directing the force against the victim's guardian or

caretaker. Thus, to commit second degree kidnapping, unlike second degree assault, it is not necessary to place the victim in fear or apprehension of harm. Conversely, one can commit an assault without abducting the victim.

Moreover, one can threaten or use deadly force during a kidnapping without using a deadly weapon. *See State v. Clarke*, 61 Wn.2d 138, 142, 377 P.2d 449 (1962) (deadly force is force "capable of, and entails great risk of, killing") and RCW 9A.04.110(6) (deadly weapon definition includes firearms and "any other weapon, device, instrument, article, or substance, including a 'vehicle' as defined in this section, which, under the circumstances . . . is readily capable of causing death or substantial bodily harm"). As the legal elements of these two crimes are not identical, the constitutional protections against double jeopardy do not bar Taylor's convictions for assaulting and kidnapping Murphy.

## MERGER

Taylor next contends that the trial court erred by refusing to merge his convictions for kidnapping and assaulting Murphy.

The merger doctrine prohibits "prosecution and punishment for an offense which the legislature has clearly intended is not to be punished separately from the greater offense." *Garcia*, 65 Wn. App. at 689. This rule applies when commission of a particular offense requires the commission of conduct defined as a crime elsewhere in the criminal statutes. *State v. Vladovic*, 99 Wn.2d 413, 421, 662 P.2d 853 (1983). But it does not apply when offenses have an independent purpose or effect. *Vladovic*, 99 Wn.2d at 421.

Division One of this court recently observed that "[t]he merger doctrine is simply another means by which a court may determine whether the imposition of multiple punishments violates the Fifth Amendment guarantee against double jeopardy, i.e., whether the legislative branch, acting within its own constitutional limitations, has authorized

cumulative punishments." *State v. Frohs*, 83 Wn. App. 803, 811, 924 P.2d 384 (1996).

■ Relevant to this inquiry are the location of the offenses within the statutory scheme, the injuries the offenses prohibit, and the presence of language clearly requiring that the State, to prove one crime, prove "not only that a defendant committed that crime . . . but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes . . . ." *Frohs*, 83 Wn. App. at 806; *see State v. Johnson*, 92 Wn.2d 671, 676, 600 P.2d 1249 (1979) (holding that Legislature clearly intended proof of assault and/or kidnapping as elements of first degree rape).

■ Looking to these factors, we find that the Legislature did not clearly intend second degree kidnapping and second degree assault to merge. These offenses arise in different chapters of the penal code. The elements of second degree assault are set forth in RCW 9A.36, Assault—Physical Harm. The elements of second degree kidnapping, on the other hand, appear in RCW 9A.40, Kidnapping, Unlawful Imprisonment, and Custodial Interference.

Nor are their purposes the same. The second degree assault with a firearm statute criminalizes conduct that inflicts or attempts to inflict or places a person in fear of physical harm. The second degree kidnapping statute, on the other hand, criminalizes the abduction of victims against their will through the use of deadly force.

Finally, neither statute contains language indicating that the Legislature "clearly" intended one crime to be an element of the other. As mentioned earlier, the threat or use of deadly force is not synonymous with the commission of second degree assault with a deadly weapon. The trial court did not err when it declined to merge these convictions.

## SENTENCING

Taylor also argues that the trial court should have treated the assault and kidnapping convictions as the same

criminal conduct for sentencing purposes. This argument has merit.

■ Generally, the trial court determines the sentence range for each current offense by adding together the offender score from all other current offenses and prior convictions. RCW 9.94A.400(1)(a); *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994). If, however, the court finds that all or some of the current offenses encompass "the same criminal conduct," then those offenses count as one crime. RCW 9.94A.400(1)(a). The statute defines "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.400(1)(a). Absent any one of these elements, the trial court must score each offense separately. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). This court will not disturb a trial court's determination regarding same criminal conduct absent a clear abuse of discretion or a misapplication of the law. *State v. Calvert*, 79 Wn. App. 569, 577, 903 P.2d 1003 (1995).

■ In this instance, the assault and kidnapping happened at the same time and place and involved the same victim. This leaves the question of whether the offenses shared the same intent. When determining if two crimes share a criminal intent, we focus on (1) whether the defendant's intent, viewed objectively, changed from one crime to the next and (2) whether commission of one crime furthered the other. *State v. Grantham*, 84 Wn. App. 854, 858, 932 P.2d 657 (1997).

The evidence established that Taylor's objective intent in committing the kidnapping was to abduct Murphy by the use or threatened use of the gun and that his objective intent in participating in the second degree assault was to persuade Murphy, by the use of fear, to not resist the abduction. The assault began at the same time as the abduction, when Taylor and Nicholson entered the car. It ended when the kidnappers exited the car and the abduction was over. And there is no evidence that Taylor or Nicholson engaged

in any assaultive behavior during the kidnapping that did anything beyond facilitating and furthering the abduction.

 Further, because the assault and kidnapping were committed simultaneously, it is not possible to find a new intent to commit a second crime after the completion of the first crime. *See Grantham*, 84 Wn. App. at 859 (evidence of sequential rapes sufficient to support trial court's finding that defendant formed new intent to commit second act). Thus, this record supports only a finding that the offenses were part of the same criminal conduct and Taylor is entitled to have the two offenses counted as one crime. RCW 9.94A.400(1)(a).

## WEAPON ENHANCEMENT

Finally, Taylor argues that the trial court erroneously imposed a weapon enhancement sentence for the second degree kidnapping conviction. He argues that the State failed to give notice that it was seeking the weapon enhancement sentence for the lesser included offense of second degree kidnapping. He also argues that the jury was not instructed regarding the applicability of the enhancement to second degree kidnapping and that the enhancement verdict form was inconsistent with the first and second degree verdict forms.

 Generally, the State must give the accused notice of the charge he will face at trial. An accused cannot be convicted of an uncharged or inadequately charged offense. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). A jury may, however, find an accused guilty of a lesser degree offense when the State charges the accused with a higher degree of a multiple degree offense. RCW 10.61.003, .006, .010. In such instances, the State does not have to notify the defendant that he may be convicted of the lesser included offense. *State v. Pelkey*, 109 Wn.2d 484, 487-88, 745 P.2d 854 (1987).

The trial court provided the jury with three verdict forms relating to the Murphy kidnapping charge, Count V. Verdict

form 1 asked whether Taylor was guilty of first degree kidnapping. The jury found Taylor not guilty. Verdict form 2 asked whether Taylor was guilty of the lesser included offense of second degree kidnapping. The jury convicted on this offense.

The third verdict form provided,

We, the jury, return a special verdict by answering as follows:

Was the defendant JONATHAN ALLEN TAYLOR armed with a deadly weapon at the time of the commission of the crime in Count FIVE?

Answer: _____ (Yes or No or Unable to Agree)

The jury answered "yes."

By specifically referring to Count Five, the weapons enhancement special verdict form encompassed first and second degree offenses. We see no inconsistency. Further, there is sufficient evidence in the record showing that Nicholson used a firearm during the kidnapping and Taylor acted as his accomplice. Thus, the trial court did not err in imposing the deadly weapon enhancement to the kidnapping sentence.

We affirm the convictions, reverse the sentence, and remand for resentencing in accordance with this opinion.

HOUGHTON, C.J., and MORGAN, J., concur.