[No. 35612-1-II.   Division Two.   April 8, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. JASON D. WALKER, *Appellant*.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund and Mistry*), for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Jason Walker appeals his jury conviction and sentence for one count of first degree theft and one count of first degree trafficking in stolen property. United States Forest Service officers discovered three individuals, including Walker, splitting and stacking blocks of old growth cedar wood in a national forest. Walker admitted that he planned to cut enough cedar blocks to sell to a local

mill. Estimating the stolen cedar's value above $7,500, the State charged Walker with one count of first degree theft and one count of first degree trafficking in stolen property. A jury found him guilty as charged. He appeals, arguing (1) his two convictions encompassed the same criminal conduct and (2) he received ineffective assistance of counsel. We affirm.

## FACTS

¶2 Forest Service Officers Jay Webster and Jason Haberberger investigated reports of theft of old growth cedar wood in a national forest. They noticed fresh vehicle tracks on a logging road. And they could hear "blocks of wood, cedar wood, being split with a mallet and a froe." 1 Report of Proceedings (RP) at 16. Webster recalled, "It's a sound I've heard in my 39 years of employment many, many, many times." 1 RP at 16.

¶3 The officers quietly approached the scene and observed three individuals, including Walker, split and stack blocks of cedar. The officers noticed a relatively sophisticated system for cutting, stacking, and loading the blocks. They also noticed a Ford Bronco parked nearby. After watching for about 30 minutes, Officers Webster and Haberberger left the scene, drove to the main road, and waited for backup to arrive.

¶4 Webster and Haberberger then led a group of backup officers back into the forest. Within several hundred yards of the scene, the officers observed three people walking along the logging road. The officers identified themselves. The individuals tried to escape but, after a short canine search, the officers arrested the three people.

¶5 Officer Haberberger interviewed Walker and he admitted that he planned to cut enough cedar blocks to sell to a local mill. Officers found numerous items at the site, including tools, toilet paper, a flashlight, clothing, bags of food, and water. A forestry industry technician estimated the wood that Walker planned to cut would exceed a $7,500 value.

¶6 Investigators learned that Walker had sold cedar to a mill owned by Jose Leguizamo on February 23 and again on February 25, 2004, just one day before his arrest. To facilitate the sale, Walker had shown Leguizamo a stolen cedar salvage permit.

¶7 The State charged Walker with one count of first degree theft and one count of first degree trafficking in stolen property. A jury found Walker guilty on both counts. The sentencing court counted these convictions separately for purposes of calculating Walker's offender score and sentenced him to a standard range sentence. Walker appeals.

## ANALYSIS

### DOUBLE JEOPARDY

¶8 Walker argues that the entry of convictions for both first degree theft and first degree trafficking in stolen property placed him in double jeopardy. We disagree.

### A. STANDARD OF REVIEW

¶9 The State may bring multiple charges arising from the same criminal conduct in a single proceeding. *State v. Michielli*, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997). But trial courts may not enter multiple convictions for the same offense without offending double jeopardy. *State v. Vladovic*, 99 Wn.2d 413, 422, 662 P.2d 853 (1983). At issue in any double jeopardy analysis is whether the legislature intended to impose multiple punishments for the same offense. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). We review double jeopardy questions de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

¶10 Courts may discern the legislature's purpose by applying the tests set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) (same elements test), and *State v. Reiff*, 14 Wash. 664, 667, 45 P. 318 (1896) (same evidence test). *State v. Calle*, 125 Wn.2d

769, 777-78, 888 P.2d 155 (1995). Under *Blockburger*'s "same elements" test, a court may penalize a defendant for one act or transaction that violates two distinct statutory provisions only if each "provision requires proof of a fact which the other does not." 284 U.S. at 304. And under the Washington rule for "same evidence," double jeopardy attaches only if the offenses are identical in both law and fact, which is demonstrated when " 'the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other.' " *Reiff*, 14 Wash. at 667 (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)). In other words, if the evidence to prove one crime would also completely prove a second crime, the two crimes are the same in law and fact. *Orange*, 152 Wn.2d at 820. The Washington rule is largely indistinguishable from the *Blockburger* rule. *Orange*, 152 Wn.2d at 816.[1]

## B. DIFFERENT ELEMENTS

¶11 We first hold that the two charged crimes contained unique elements. The two convictions did not subject Walker to double jeopardy under the *Blockburger* "same elements" test. 284 U.S. at 304.

¶12 To prove first degree theft, the State had to prove:

(1) Walker wrongfully obtained or exerted unauthorized control over Forest Service property;

(2) the property exceeded $1,500 in value;

(3) Walker intended to deprive the Forest Service of its property; and

(4) the acts occurred in Washington.

To prove first degree trafficking in stolen property, the State had to prove:

(1) Walker trafficked in stolen property,

---

[1] The merger doctrine is another way to determine legislative intent, but Walker does not provide argument under that doctrine. Thus, we decline to analyze this case under the merger doctrine. *See State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004) (an appellate court will not review issues for which inadequate argument has been briefed or only passing treatment has been made).

(2) Walker acted knowingly, and

(3) the acts occurred in Washington.

"Traffic" means "to possess or obtain control of stolen property with intent to sell or dispose of the property to another person." Clerk's Papers at 18.

¶13 The two charges in this case are unique in several ways. Most importantly, the intent elements differed: (1) for theft, the State had to prove Walker intended to deprive the owner of its property, while (2) for trafficking, the State had to prove Walker intended to sell or dispose of another's property to a third party. A person could steal (i.e., intend to deprive an owner of) its property without intending to sell or dispose of that property to a third party and could sell property to another, knowing that it was stolen, without having been the thief.

¶14 This court has ruled that "a person can be convicted of theft and of trafficking in the same property." *State v. Strohm*, 75 Wn. App. 301, 310-11, 879 P.2d 962 (1994), *review denied*, 126 Wn.2d 1002 (1995). And our Supreme Court held, "[N]othing in the trafficking statute precludes the statute from applying to the thief who initially stole the property." *Michielli*, 132 Wn.2d at 237.[2] Accordingly, we hold that these two offenses do not violate double jeopardy under *Blockburger*, 284 U.S. at 304.

C. Different Evidence

¶15 Second, we hold that Walker's two convictions do not rest upon the "same evidence" and, therefore, do not violate double jeopardy under the Washington rule. *Reiff*, 14 Wash. at 667. The State did not use the evidence of one crime to completely prove a second crime.

¶16 Walker asserts that the State "could obtain convictions for both charges by proving that Mr. Walker obtained control over the timber and planned to dispose of it." Br. of

---

[2] Walker claims that neither *Michielli* nor *Strohm* is controlling here, as the State did not charge him with *actually* transferring the stolen property. But this claim is a distinction without a difference.

Appellant at 4-5. But this assertion conflates the elements and evidence of the two crimes.

¶17 To prove first degree trafficking in stolen property, the State relied in part on Officer Haberberger's postarrest conversation with Walker.[3] Haberberger memorialized Walker's statements:

> [Walker] said that he planned on cutting enough blocks to get what he figured to be $800 worth of blocks. He said he had shake and flat saw and was willing to sell it all as flat saw. He said that his intentions were to stack the blocks, leave, come back with a pickup truck and a wheelbarrow, load the blocks, and attempt to sell them to a mill. He informed me he would try to sell them to Gilroy's mill, but that he would probably not buy them, is what he told me. He said he would then go to every mill in the Amanda Park or Quinault area in order to sell the blocks.

1 RP at 126-27. The State also relied on evidence that Walker had recently sold cedar blocks to a nearby mill using a stolen cedar salvage permit.

¶18 The evidence of trafficking does not prove the elements of theft of the wood that (1) Walker wrongfully obtained or exerted unauthorized control over wood belonging to another, (2) the wood belonged to the Forest Service, (3) the wood exceeded $1,500 in value, or (4) Walker intended to deprive the Forest Service of its property. Rather, this evidence speaks only to the elements of trafficking, specifically that Walker possessed or obtained control over the wood rightfully belonging to another with an intent to sell or dispose of it to another person. This evidence of trafficking did not completely prove the second crime, theft.

¶19 Nor does the State's evidence of theft completely prove the trafficking crime. To prove theft, the State relied in part on Officer Webster's testimony that he saw Walker

---

[3] Officer Haberberger testified that he prepared a written statement of this conversation. "Upon completion of the statement . . . I then asked him to sign [the] statement, date it, and initial the lines along the edge of the statement, which he agreed to do so." 1 RP at 128.

splitting the cedar blocks belonging to the Forest Service with a froe and a mallet. He noted that Walker and his friends had a relatively sophisticated system for cutting and loading the cedar blocks. Webster testified:

> Yes. They had a setup that wasn't quite fine-tuned, if you will, for a cable yarding system similar to a log system they were trying to set up to—because the wood was a little ways away from the road. So they were going to set up what's called skyline. As crude as it was, it would work to sling these blocks of wood a bunch at a time and then bring it out to the road to a vehicle to be removed.

1 RP at 18. Officer Webster also concluded that at least one of the cedar trees had been cut down recently, noting, "The sawdust was fresh, very little discoloration." 1 RP at 32. Further, Officer Haberberger testified that he seized a number of tools from the crime scene, including a froe, a mallet, and a peavey. He discovered a small repair kit containing toilet paper, a flashlight, a multi-purpose tool, band-aids, spark plugs, and some chainsaw files. And a forestry industry technician estimated the wood that Walker planned to cut would exceed a $7,500 value. While these facts support the theft conviction, they do not prove completely that Walker possessed the wood with intent to sell or dispose of it by exchanging it with another for cash, i.e., that he trafficked. For example, he could have been stealing the wood for his own use, for instance, to shingle his garage. To traffic, he would also have to intend to sell or dispose of property he knew to be stolen by conveying it to another person, but he need not have been the thief who stole the property.

¶20 Thus, the crimes have different elements and the evidence used to prove one crime would not also completely prove a second crime. The two convictions accordingly are not the same in law or fact. *Orange*, 152 Wn.2d at 820. Therefore, we hold that, as charged and proved here, these two convictions did not subject Walker to multiple punishments for the same offense and his right to be free from double jeopardy was not violated.

INEFFECTIVE ASSISTANCE OF COUNSEL

¶21 Walker argues that he was denied effective assistance of counsel when his counsel failed to argue that his convictions for first degree theft and first degree trafficking in stolen property were the same criminal conduct for purposes of calculating his offender score.[4] We disagree.

¶22 To establish ineffective assistance of counsel, Walker must show that (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Walker must overcome a strong presumption that his counsel's representation was adequate and effective. *McFarland*, 127 Wn.2d at 335. Counsel's performance is deficient when it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). To show prejudice, Walker must establish "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland*, 127 Wn.2d at 335.

¶23 Multiple offenses encompass the same criminal conduct if the crimes involve the same (1) objective criminal intent, (2) time and place, and (3) victim. RCW 9.94A.589(1)(a). If any one of these three elements is missing, a trial court must count multiple offenses separately when calculating a defendant's offender score. *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). We will not disturb a trial court's same criminal conduct decision unless the trial court abused its discretion or misapplied the law. *State v. Burns*, 114 Wn.2d 314, 317, 788 P.2d 531 (1990).

---

[4] Although Walker does not do so, a defendant may raise a challenge to an offender score calculation for the first time on appeal. *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994).

¶24 As charged here, the crimes required proof of different intents and involved separate intended victims. Intent in this context means the defendant's objective criminal purpose in committing the crime. *In re Pers. Restraint of Holmes*, 69 Wn. App. 282, 290, 848 P.2d 754 (1993). "This, in turn, can be measured in part by whether one crime furthered the other." *State v. Vike*, 125 Wn.2d 407, 411, 885 P.2d 824 (1994).

¶25 We agree that, because Walker was the thief, his first degree theft may have furthered his commission of first degree trafficking in stolen property. But this fact alone does not mean that the offender had the same objective intent throughout the offensive conduct.[5] When viewed objectively, the criminal purposes of the two offenses are different. The first is to steal the wood. The second is to sell the wood to a third party, knowing that he does not have the right to do so because it has been stolen. As the State notes, the objective criminal purpose of the first degree theft was *to deprive* a person of its property; the objective criminal purpose of the first degree trafficking in stolen property was *to sell or dispose* of stolen property to another person. *See* RCW 9A.56.020(1)(a); RCW 9A.82.010(19). To convict Walker of both crimes, the jury necessarily found that he first intended to deprive the Forest Service (victim 1) of its wood and then, with that crime completed, intended to sell or dispose of that wood to another person (victim 2) who could not obtain clear title from Walker. Thus, Walker's objective criminal intent differed during each crime and each crime had a different intended victim.

¶26 Our ruling comports with *State v. Maxfield*, 125 Wn.2d 378, 886 P.2d 123 (1994). In *Maxfield*, our Supreme

---

[5] In this case, Walker's first degree theft was not necessarily intimately related to his first degree trafficking in stolen property. *Contra State v. Miller*, 92 Wn. App. 693, 708, 964 P.2d 1196 (1998) (struggle with an officer was one continuous event involving both an assault and an attempted theft of a firearm; there was no change in purpose throughout the struggle), *review denied*, 137 Wn.2d 1023 (1999); *State v. Taylor*, 90 Wn. App. 312, 321-22, 950 P.2d 526 (1998) (kidnapping and assault that were committed simultaneously shared the same objective intent).

Court upheld a trial court's ruling that two crimes, controlled substance manufacture and controlled substance possession with intent to deliver, were not the same criminal conduct. Police found that the defendant grew marijuana and found plastic baggies, indicating intent to deliver that marijuana. Our Supreme Court held:

> [T]here were different "objectives"; one was to grow the drug, the other was to deliver it to third persons. . . . The growing marijuana in the garage showed intent (in the past and present) to "manufacture" a controlled substance, whereas the marijuana found in the house in plastic baggies showed the defendant's intent to deliver the drugs in the future.

*Maxfield*, 125 Wn.2d at 403 (footnote omitted). The present case is nearly identical. The cedar felling operation showed Walker's intent (in the past and present) to steal Forest Service property, while Walker's confession showed his intent to traffic the cedar in the future. There were different "objectives"; one was to take the cedar from the Forest Service, the lawful owner, and the other was to sell stolen cedar to a lumber mill.

¶27 The distinction in intents analyzed in *Maxfield* also reveals a lack of unity in time. Walker previously and presently committed first degree theft against the Forest Service, while his act of trafficking was planned for the future.

¶28 This analysis also reveals two victims. The victim of theft was the Forest Service, while the victim of the trafficking was the unsuspecting saw mill owner who was to purchase wood he would have to return to its rightful owner. *Canadian Bank of Commerce v. Bingham*, 30 Wash. 484, 487, 71 P. 43 (1902) (holding that the transfer of stolen property conveys no title and the purchaser has no right to retain it).

¶29 Because we hold that Walker's offenses were not the same criminal conduct, Walker's defense counsel had no need to argue that his convictions for first degree theft and first degree trafficking in stolen property were the

same criminal conduct for purposes of calculating his offender score. Therefore, Walker fails to show that his defense counsel was ineffective.

¶30 Accordingly, we affirm.

HOUGHTON, C.J., and ARMSTRONG, J., concur.