FILED
COURT OF APPEALS
DIVISION II

2014 DEC -2 AM 8: 59

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | Consolidated Nos. 44926-9-II<br>45958-2-II |
| Respondent, | |
| v. | |
| BRADLEY PULLEY KILLIAN, III, | UNPUBLISHED OPINION |
| Appellant. | |
| In Re the Personal Restraint Petition of: | |
| BRADLEY PULLEY KILLIAN, III, | |
| Petitioner. | |

MAXA, J. — Bradley Killian appeals his convictions following a bench trial for assault in the second degree (two counts), assault in the fourth degree, harassment, and felony harassment arising from a series of domestic violence incidents with his wife. Killian argues that defense counsel's failure to impeach his wife using her contradicting statements on one issue constituted ineffective assistance of counsel. Killian's appeal is consolidated with his personal restraint petition (PRP), in which he argues that his convictions for assault and for harassment violated double jeopardy, his multiple convictions should have been treated as the same criminal conduct for sentencing purposes, two 1996 convictions should have been treated as the same criminal conduct for sentencing purposes, and the trial court lacked the authority to impose an exceptional sentence.

We hold that (1) even if counsel was ineffective in failing to cross-examine on inconsistent statements, Killian suffered no prejudice; (2) Killian's two assault convictions involved different courses of conduct and his two harassment convictions were for separate acts, and therefore did not violate double jeopardy; (3) Killian's second degree assault and felony harassment did not constitute the same criminal conduct; (4) Killian presented no evidence or argument that his two 1996 convictions constituted the same criminal conduct at that time, and therefore he cannot establish error in counting these convictions separately in his offender score; and (5) the trial court had authority to impose an exceptional sentence based on an aggravating factor of 40 unscored misdemeanors. Accordingly, we affirm Killian's convictions and sentence and deny his PRP.

## FACTS

Killian and his wife Kierra Henderson were involved in an argument on March 15, 2012. On March 16 Killian held a hot iron to Henderson's thigh for roughly ten seconds. On March 17, Killian slapped Henderson, pinned her down, and then held a lit cigarette near her eyes while threatening to "burn [Henderson's] eyes out." Verbatim Report of Proceedings (VRP) (Feb. 19, 2013) at 229. On March 18, Killian entered the bathroom where Henderson was showering and held a knife to her throat while he threatened to kill her.

The State charged Killian with five separate counts based on these events. Count I alleged Killian committed second degree assault when he pressed a hot iron against Henderson's leg on March 16. Counts II and III alleged Killian committed fourth degree assault and harassment respectively when he struck Henderson and threatened to burn her eyes with a lit cigarette on March 17. Counts IV and V alleged Killian committed second degree assault and

felony harassment respectively when he threatened to kill Henderson with a knife while she showered on March 18. The State's charges all included domestic violence sentencing enhancements, and the felony charges included unscored misdemeanor aggravators as well.

At trial Henderson testified about the burn mark on her leg that Killian caused when he burned her with the hot iron. One officer who arrested Killian testified that Henderson showed him the burn at that time.

The State offered into evidence an iron that officers seized from Killian's and Henderson's residence. But Henderson testified that the iron presented at trial was not the iron used by Killian to burn her because the setting dial was broken. She testified that she owned multiple irons because her brother worked for a hotel and would give her irons the hotel no longer used. Because Henderson testified the iron presented at trial was identical to the iron Killian used to burn her, the trial court admitted the iron as an illustrative exhibit.

Killian testified in his own defense and denied that any altercations took place. Killian's nephew testified for the defense that Henderson stated she accidentally burned herself with the iron.

The trial court found Killian guilty on all charges except Count IV, one of the second degree assault charges. The trial court also found that the State proved the domestic violence sentencing enhancements and unscored misdemeanor aggravators. At sentencing, defense counsel informed the court that he recently noticed the police report indicated that Henderson told the police that the iron the officers collected was "the only iron in the house." VRP (May 17, 2013) at 9. Counsel stated that his failure to impeach Henderson with this statement may have constituted ineffective assistance of counsel. The trial court stated, "I don't think

3

[Henderson's contradictory statement] probably would have made any difference." VRP (May 17, 2013) at 11.

The trial court sentenced Killian within the standard range for the two felonies – 63 months confinement for Count I and 43 months confinement for Count V - but imposed an exceptional sentence when it ordered the sentences to be served consecutively. The trial court's written findings of fact and conclusions of law identified Killian's unscored misdemeanor criminal history as the aggravating factor for the exceptional sentence. Killian appeals.

## ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Henderson testified at trial that the broken iron the State offered into evidence was not the iron Killian had used to burn her and that she owned several irons. This testimony was inconsistent with the statement she made to officers that the iron they collected was the only iron in the house. Killian argues that his trial counsel's performance was deficient because his trial counsel failed to impeach Henderson based on her prior inconsistent statement and that this failure prejudiced the outcome of his trial. We disagree.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 34. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed.

*Grier*, 171 Wn.2d at 34. Reasonable probability in this context means a probability sufficient to undermine confidence of the outcome. *Grier*, 171 Wn.2d at 34.

Here, even if we assume that defense counsel's performance was deficient, the record demonstrates that the failure to impeach Henderson caused no prejudice. This case is somewhat unique in that defense counsel raised his failure to impeach Henderson using her inconsistent statement before the trial court that adjudicated Killian's case. Defense counsel stated that if the impeachment would have changed the trial court's decision he was ineffective, but if it would not have changed the decision it was a moot point. [1] In response, the trial court stated, "Whether the specific iron retrieved and presented was correct or not was not really particularly relevant as to the outcome." VRP (May 17, 2013) at 11. The trial court also noted that the evidence that Henderson had been burned by an iron was substantial. The trial court concluded, "I don't think it probably would have made any difference." VRP (May 17, 2013) at 11.

Because this case involved a bench trial, the trial court's conclusion that the impeachment would not have affected its decision is significant. Based on the trial court's indication that use of the inconsistent statement to impeach Henderson would have had no bearing on the outcome of the case, we hold that Killian cannot demonstrate prejudice. Therefore, we reject Killian's ineffective assistance of counsel claim.

---

[1] In its previous oral ruling the trial court stated, "I am satisfied beyond a reasonable doubt that [Henderson] was being truthful. . . . [T]he photos and the other testimony is consistent with [her] testimony as to what happened." VRP (Feb. 20, 2013) at 359.

5

B.    PERSONAL RESTRAINT PETITION

Killian collaterally attacks his conviction through a PRP, arguing that the trial court (1) violated his right against double jeopardy by convicting and sentencing him for crimes which stem from the same act of domestic violence, (2) erred by failing to determine that his two assault convictions and his two harassment convictions constituted the same criminal conduct, (3) erred in failing to treat two 1996 convictions as the same criminal conduct, and (4) erred by imposing an exceptional sentence.

1.    Standard of Review

Issues raised for the first time in a PRP must meet a heightened showing before a court will grant relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). For alleged constitutional errors, a petitioner must show actual prejudice. *Yates*, 177 Wn.2d at 17. For alleged nonconstitutional errors, the petitioner " 'must show a fundamental defect resulting in a complete miscarriage of justice.' " *Yates*, 177 Wn.2d at 17 (quoting *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007)). The petitioner must make these showings by a preponderance of the evidence. *Yates*, 177 Wn.2d at 17.

When reviewing a PRP, a court may: (1) dismiss the petition, (2) transfer the petition for a full determination on the merits or a reference hearing, or (3) grant the petition. *Yates*, 177 Wn.2d at 17. A court must dismiss a petition that fails to make a prima facie showing of actual prejudice for alleged constitutional errors or a fundamental defect resulting in a complete miscarriage of justice for alleged nonconstitutional errors. *Yates*, 177 Wn.2d at 17.

2.    Double Jeopardy

A defendant's constitutional right against double jeopardy precludes multiple punishments for the same offense. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). We review double jeopardy claims de novo. *Villanueva-Gonzalez*, 180 Wn.2d at 979-80.

a.    Second and Fourth Degree Assault Convictions

Killian argues his second degree assault and fourth degree assault convictions violated double jeopardy. We disagree.

When, as here, a defendant is convicted of two crimes under two different statutes, we generally apply the *Blockburger*[2] test. *Villanueva-Gonzalez*, 180 Wn.2d at 981. This test asks whether the convictions were the same in law and in fact.[3] When a defendant has two convictions under the same statute, we generally apply the unit of prosecution test. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. This test focuses on the specific act or course of conduct the statute defines as the punishable act. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. However, our Supreme Court in *Villanueva-Gonzalez* held that the unit of prosecution test, not the same evidence test, applies to convictions for different degrees of assault. 180 Wn.2d at 981-82. Therefore, we must apply the unit of prosecution test to evaluate Killian's double jeopardy claim.

The court in *Villanueva-Gonzalez* also held that assault should be treated as a course of conduct crime. 180 Wn.2d at 984-85. Therefore, the question in applying the unit of

---

[2] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[3] The *Blockburger* test also is referred to as the same evidence test. *State v. Hughes*, 166 Wn.2d 675, 682 n.6, 212 P.3d 558 (2009).

7

prosecution test to assault convictions is whether multiple assault acts constitute one or more than one course of conduct. *Villanueva-Gonzalez*, 180 Wn.2d at 985. The court identified the following factors for making this determination, (1) the length of time over which the assaultive acts took place, (2) whether the assaultive acts took place in the same location, (3) the defendant's intent or motivation for the different assaultive acts, (4) whether the acts were uninterrupted or if there were any intervening acts or events, and (5) whether there was an opportunity for the defendant to reconsider his actions. *Villanueva-Gonzalez*, 180 Wn.2d at 985. No one factor is dispositive, and the ultimate determination of whether multiple assaultive acts constitute one course of conduct depends on the totality of the circumstances. *Villanueva-Gonzalez*, 180 Wn.2d at 985.

Killian's second degree assault conviction arose from burning Henderson with an iron in the early afternoon on March 16. After Killian burned Henderson, the two picked up Henderson's daughter from school with Killian's mother, went grocery shopping, and then went to sleep later that evening. On March 17, Killian slapped Henderson, which gave rise to Killian's fourth degree assault charge. The acts were on separate days and were interrupted by routine daily events which allowed Killian to reconsider his assaultive conduct.

Considering the totality of the circumstances, we hold that Killian's act of burning Henderson and slapping Henderson did not stem from the same course of conduct. Therefore, the two assault convictions do not violate Killian's constitutional right against double jeopardy.

b. Harassment and Felony Harassment Convictions

Killian also argues that his convictions for both harassment and felony harassment violate double jeopardy. We disagree.

As noted above, we generally apply the *Blockburger* test, also called the same evidence test, when a defendant is convicted of two crimes under two different statutes. *Villanueva-Gonzalez*, 180 Wn.2d at 981. The question is whether the offenses are identical in law and fact. *Villanueva-Gonzalez*, 180 Wn.2d at 981. We apply this test to Killian's harassment convictions.

Here, Killian's harassment and felony harassment convictions were not the same in fact nor the same in law. Felony harassment requires additional proof, such as a threat to kill another person, which is not required to support a harassment conviction. RCW 9A.46.020(2)(b). The additional proof required elevates the defendant's conduct from a gross misdemeanor to a class C felony. *See* RCW 9A.46.020(2)(a), (b). This difference in proof between misdemeanor and felony harassment demonstrates that the two crimes were different in law.

Moreover, the State used different evidence to prove the separate charges, rendering the charges different in fact. Killian's felony harassment conviction arose from Killian threatening to kill his wife while he held a knife to her neck as she showered on Sunday evening. By contrast, Killian's harassment conviction arose from his threat to burn Henderson's eyes out with his cigarette right after midnight on Sunday morning. Therefore, the convictions were not the same in fact. We hold that Killian's two harassment convictions do not violate double jeopardy.

3. Same Criminal Conduct Analysis

Killian argues that the trial court erred in failing to perform a same criminal conduct analysis on counts II, III, IV, and V which resulted in an incorrect offender score. We hold that

9

count I and count V clearly did not constitute the same criminal conduct. Counts II and III were misdemeanors not included in the offender score, and Killian was not convicted of count IV.[4]

An appellate court reviews offender score calculations de novo while reviewing a same criminal conduct analysis for abuse of discretion or misapplication of the law. *State v. Johnson*, 180 Wn. App. 92, 100, 320 P.3d 197, *review denied*, 181 Wn.2d 1003 (2014). A trial court abuses its discretion where the court: (1) adopts a view no reasonable person would take and is manifestly unreasonable; (2) rests on facts unsupported in the record and is therefore based on untenable grounds; or (3) was reached by applying the wrong legal standard and is made for untenable reasons. *Johnson*, 180 Wn. App. at 100.

When calculating an offender's score, a court must count all convictions separately except offenses which encompass the same criminal conduct. RCW 9.94A.525(5)(a)(i), .589(1)(a). Offenses which constitute the same criminal conduct are counted as one offense. RCW 9.94A.525(5)(a)(i). " 'Same criminal conduct. . .' means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). If any element of the same criminal conduct analysis is missing, a trial court must count the offenses separately when calculating the offender score. *State v. Walker*, 143 Wn. App. 880, 890, 181 P.3d 31 (2008).

---

[4] Under RCW 9.94A.525(21), these misdemeanors arguably should have been counted when calculating Killian's offender score because the State proved the domestic violence enhancements. *See State v. Rodriguez*, ___ Wn. App. ___, 335 P.3d 448, 454 (2014). However, the State did not argue this issue below or cross appeal, so we need not address it.

The defendant bears the burden of proving current offenses encompass the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013). The same criminal conduct statute is "construed narrowly to disallow most claims that multiple offenses constitute the same criminal act." *Aldana Graciano*, 176 Wn.2d at 540 (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)).

Count II (fourth degree assault), count III (harassment), and count IV (second degree assault) do not factor in this analysis. Killian was acquitted on count IV and the trial court did not use this charge to determine his offender score. Counts II and III were not counted for purposes of determining his offender score. Therefore, a same criminal conduct analysis is relevant only to count I (second degree assault) and count V (felony harassment).

Count I (second degree assault) and count V (felony harassment) clearly do not constitute the same offense under a same criminal conduct analysis because the acts giving rise to those convictions were not "committed at the same time and place." RCW 9.94A.589(1)(a). Count I arose from when Killian burned Henderson with an iron on March 16 in the early afternoon. By contrast, Count V arose from Killian's threat to kill Henderson with a knife on the evening of March 18. Therefore, we hold that the second degree assault and felony harassment did not constitute the same criminal conduct.

4.    1996 Convictions

Killian argues the trial court erred by counting his two assault convictions from 1996 separately in his offender score because the prior sentencing court imposed a concurrent sentence. We disagree.

11

For purposes of computing an offender score using prior offenses, a sentencing court must defer to the prior sentencing court's determination that multiple offenses constitute the same criminal conduct. RCW 9.94A.525(5)(a)(i). If the prior sentencing court did not make such a determination but imposed concurrent sentences for multiple offenses, the current sentencing court must independently determine whether the prior offenses were one offense or separate offenses under a same criminal conduct analysis. RCW 9.94A.525(5)(a)(i); *see also Johnson*, 180 Wn. App. at 101.

Here, the 1996 sentencing court did not expressly find that the two convictions constituted the same criminal conduct, but imposed concurrent sentences. Therefore the trial court sentencing Killian in 2013 was required to perform a same criminal conduct analysis. However, Killian does not provide any evidence or even an argument that his 1996 assault convictions constitute the same criminal conduct. Nowhere in Killian's PRP or in his reply does he affirmatively argue that the two assaults involved the same criminal intent, were committed at the same time and place, or involved the same victim. As a result, he has not shown actual prejudice, which is required to sustain a PRP. *Yates*, 177 Wn.2d at 17.

Killian cannot establish that the trial court erred in failing to treat his two 1996 offenses as the same criminal conduct and counting these convictions separately in his offender score. Therefore, we reject Killian's same criminal conduct argument regarding his two 1996 convictions.

12

5.    Exceptional Sentence

Killian argues the trial court lacked the authority to impose an exceptional sentence. Specifically, he claims that "absent the courts [sic] written findings of fact and conclusions of law the court lacked the authority to impose the exceptional sentence." PRP at 14-15.

To reverse an exceptional sentence, the appellate court must find that (1) the reasons supplied by the sentencing court are not supported by the record when reviewed under a clearly erroneous standard, (2) the supplied reasons do not justify a sentence outside the standard range when reviewed using a de novo standard, and (3) the sentence imposed was clearly excessive when reviewed under an abuse of discretion standard. RCW 9.94A.585(4), *State v. Alvarado*, 164 Wn.2d 556, 560-61, 192 P.3d 345 (2008).

Here, the trial court imposed an exceptional sentence, ordering that the sentences for second degree assault and felony harassment be served consecutively. The trial court based the exceptional sentence on Killian's "prior unscored misdemeanor or foreign criminal history" as evidenced by "40 prior unscored misdemeanors." Clerk's Papers at 362. This unscored criminal history is a proper basis for an exceptional sentence under former RCW 9.94A.535(2)(b) (2011).[5] And contrary to Killian's contention, the trial court did provide written findings of fact for the exceptional sentence and thereby satisfied the writing requirement of former RCW 9.94A.535.

---

[5] RCW 9.94A.535 was amended on three occasions in 2013. However, none of these amendments affects the subsection cited. LAWS OF 2013, ch. 84, §26; ch. 256, §2; 2nd sp. s., ch. 35, §37.

Consol. Nos. 44926-9-II / 45958-2-II

Because Killian's extensive criminal history is supported by the record, Killian fails to provide adequate evidence for us to reverse his exceptional sentence. Therefore, we hold that the trial court did not err in imposing an exceptional sentence.

We affirm Killian's convictions and sentence and deny his PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
MELNICK, J.

14