IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36066-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THOMAS ALVIN SWARERS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Thomas Swarers challenges on appeal only his sentence, and not his convictions on two counts of attempted rape of a child in the first degree. He attacks the sentence indirectly through the assertion of ineffective assistance of counsel. He contends that his trial counsel performed deficiently when failing to request that the sentencing court score his two convictions for attempted rape of a child as one because the two crimes constituted the same criminal conduct under RCW 9.94A.589(1)(a). After traveling a morass of Washington decisional law regarding the same intent element of same criminal conduct, we reject Swarers's claim of ineffective assistance of counsel. Swarers cannot establish prejudice because, even assuming his counsel forwarded the request, we do not conclude that the trial court would likely have ruled that the two convictions entailed the same intent for purposes of the same criminal conduct statute.

FACTS

The only assignments of error in this appeal concern sentencing. Nevertheless, the underlying facts of the crime bear relevance because Thomas Swarers claims the sentencing court should have combined both of his crimes as one crime for sentencing purposes because the two entailed the same criminal misconduct.

The Washington State Patrol operates the Missing and Exploited Children Task Force (MECTF), which investigates sexual exploitation of minors. In August 2015, MECTF started conducting "Net Nanny" operations. Report of Proceedings (RP) at 379. Net Nanny intends to recover children and identify people looking to sexually exploit children. As part of such an operation, law enforcement officers post ersatz Craigslist ads that offer taboo and illegal sex, such as sex with children.

In July 2017, Washington State Patrol Detective Sergeant Carlos Rodriguez and other members of MECTF conducted a Net Nanny operation in the Tri-Cities. The task force rented three apartments to run the operation: one for a command post, one as an undercover house to which to send potential offenders, and a third for conducting postarrest interviews.

On July 7, 2017, at some unknown time but early in the morning, MECTF posted the following advertisement on Craigslist:

> Mommy likes to watch—young family fun—420 friendly—w4m (kpr).

> [S]till looking for that special man.  Young family fun.  experience with taboo is best.  Replies with phone numbers get answers from me more quickly.  change the subject line to your name and favorite color so I know you are not a bot.  2 dau 1 son
>         lg for daddy here

Clerk's Papers (CP) at 12 (punctuation and spelling in original).  "Kpr" refers to Kennewick, Pasco, and Richland.  RP at 433.  "W4m" means woman for men.  RP at 433.  "420 friendly" references someone who enjoys marijuana.  RP at 433.  "Dau" stands for daughters, and "lg" abbreviates "little girl."  RP at 434.

At 6:24 a.m. on July 7, Thomas Swarers responded to the Craigslist ad:

> What does mommy like to watch daddy do?  Is you[r] family invoked [sic] in this?  If so, I may be interested.  Get back to me before I give out a number.  Tom.

CP at 12; RP at 437.  The subject line of Swarers's message read "Tom Blue."  RP at 437.

Detective Carlos Rodriguez, playing the role of the mother, responded to Tom Swarers.  The fictitious mother responded with improved grammar and explained that she had three children of varying sexual experience:

> My girls are 11 and 6.  Oldest is not totally active but still likes to play and is very ready and mature.  Younger is not very active at all.  My boy is 13.  Son is very active.  I'm single and looking for someone that is open and free to new ideas.

RP at 438-39.

3

The messages between Thomas Swarers and the fictitious mother of three

continued:

> [SWARERS]: 'So I'm more for the girls than mom?'
> [MOTHER]: 'yes this is for my kids.  not you and me sorry hun.'
> . . . .
> [SWARERS]: 'That's ok, as long as your good with it.'
> [MOTHER]: 'Yes of course.  i can teach them some but its good for them to have a man to show them what feels good and how to do things.'
> [SWARERS]: 'Yes, that's true.  I can show them what a man likes and teach them also.'
> . . . .
> [MOTHER]: 'i just like to be able to prepare my kids for what may or may not happen.  Especially the girls you know?'
> [SWARERS]: 'I understand, that's why I said 'play it by ear.'  They may not even like me.'
> [MOTHER]: 'oh I think they will.  I already showed them your picture and they thought you looked very nice.  The friend I had before was an older gentleman, they called him pappa and they liked him a lot.  He was very gentle with them.'
> . . . .
> [SWARERS]: 'And will be too, babe.'

RP at 477-80 (punctuation and spelling in original).  The two continued to discuss sex

acts.  Swarers mentioned both girls performing oral sex and his attempting partial

penetration of the eleven-year-old girl.

> [MOTHER]: 'the oldest has had a penis partially pushed in but it was hurting so he stopped and they did other stuff.'
> [SWARERS]: 'That's the same thing that we'll do, don't want to hurt anyone.'

RP at 487-88 (punctuation and spelling in original).

4

In later messages, the fictitious mother invited Thomas Swarers to come to her apartment for the sexual encounters. The mother directed Swarers to a nearby 7-11 convenience store, asked him to buy the girls Slurpees, directed him to take a picture of himself, and asked him to send the photograph to her. Swarers complied with all requests. The mother then sent Swarers her supposed address. Officers arrested Swarers on his arrival at the undercover apartment. Swarers possessed, on arrest, two nipple clamps, two bottles of lubrication, three condoms, a blister pack of two Viagra pills, and a remote-controlled sex toy.

In a postarrest interview, Thomas Swarers denied any intention of having sex with children. He claimed he only traveled to the apartment to meet the mother in hopes of developing an intimate relationship with her.

PROCEDURE

The State of Washington charged Thomas Swarers with two counts of attempted rape of a child in the first degree. The State charged one count for Swarers's intended sexual encounter with the fictitious six-year-old girl and another count for the envisioned sexual encounter with the invented eleven-year-old daughter.

Thomas Swarers did not testify at trial, but the court played his postarrest interview for the jury. The jury found Swarers guilty of both counts.

As part of sentencing, both defense counsel and the State calculated Thomas Swarers's standard range sentence as ninety to one hundred and twenty months based on

an offender score of three. The offender score included two crimes based on the two convictions for attempted rape. Defense counsel did not ask that the court score the two crimes as only one criminal conviction for purposes of sentencing. Defense counsel sought a mitigated exceptional sentence downward based on Swarers's harming no children. The sentencing court sentenced Swarers to 108 months' confinement. The court found Swarers indigent and imposed only mandatory legal financial obligations.

## LAW AND ANALYSIS

As his principal assignment of error on appeal, Thomas Swarers contends his trial counsel performed ineffectively for failing to argue at sentencing that his two convictions constituted the same criminal conduct for purposes of calculating his offender score. He promotes the same criminal conduct theory as a winning argument before the sentencing court. The State argues that the two charges do not comprise the same criminal conduct and, even assuming the same criminal conduct, defense counsel's performance was not deficient for failing to raise the argument.

### Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel raises an issue of constitutional magnitude that this court may consider for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). To demonstrate ineffective assistance of counsel, a defendant must make two showings. First, the defendant must establish that defense counsel's representation was deficient in that the performance fell below an objective

standard of reasonableness based on consideration of all circumstances. Second, a

defendant must show that defense counsel's representation prejudiced the defendant.

This entails showing a reasonable probability that, except for counsel's errors, the result

of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-

35, 899 P.2d 1251 (1995). A reviewing court need not consider both prongs of the

ineffective assistance analysis if a defendant fails on one. *In re Personal Restraint of

Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). We address only the prejudice

prong.

To support his claim of prejudice, Thomas Swarers argues that the high end of his

sentence would have been approximately fifteen months lower than his current sentence

had the charges been viewed as same criminal conduct. His offender score would have

been two, rather than three. We agree with this calculation. Nevertheless, Swarers

forwards the wrong understanding of prejudice. Swarers's argument assumes the trial

court would have agreed with defense counsel had counsel asserted the argument. The

failure to make a same criminal conduct argument is only prejudicial if the defendant

shows that, with the argument, the sentence would have differed. *State v. Munoz-Rivera*,

190 Wn. App. 870, 887, 361 P.3d 182 (2015); *State v. Beasley*, 126 Wn. App. 670, 686,

109 P.3d 849 (2005).

We generally would now analyze the notion of same criminal conduct for

purposes of an offender score at sentencing. Because of the length of this analysis and

7

because of the abhorrence toward lengthy opinions, we reserve this analysis for an appendix. We also place the analysis in an appendix because not all members of the panel agree with the analysis. We all conclude, however, that Thomas Swarers cannot show that the court would have counted the two crimes for purposes of his offender score. Therefore, we reject his claim of ineffective assistance of counsel.

We observe that Division One's decision in *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 299 P.3d 37 (2013), probably disagrees with our ruling in Thomas Swarers's appeal. In *Rattan Keo Phuong*, Rattana Keo Phuong's ex-wife, Liem, visited their children at Phuong's residence. As the former wife prepared to leave, Phuong called her a "'hooker'" and asked her for sex. *State v. Rattana Keo Phuong*, 174 Wn. App. at 500 (2013). The ex-wife refused and left the house. Phuong followed her out of the house and dragged her from the car, through the garage, and back into the house. Phuong pulled the ex-wife upstairs to his bedroom, while she kicked and screamed and the children pleaded for their father to stop. Phuong pulled her into his bedroom and locked the door. Phuong tried to pull down her pants, tearing the crotch seam of the pants. He removed his shirt and attempted to mount her, while she kicked and fought back. Phuong successfully prevented her from escaping by pinning her down by her wrists and telling her that he still loved her and wanted to have sex with her. Phuong did not stop until he heard his neighbor knocking on the door downstairs.

In *State v. Rattana Keo Phuong*, Phuong's trial counsel did not argue that the convictions for unlawful imprisonment and attempted rape should be scored as one crime. This court concluded that a reasonable possibility existed that the sentencing court would have found that the attempted rape and unlawful imprisonment offenses constituted the same criminal conduct had Phuong's counsel so argued. The offenses were committed at the same time and place and involved the same victim. Moreover, a sentencing court could determine that the offenses were committed with the same criminal intent. Phuong's objective criminal purpose in committing each offense, the court could conclude, was to rape Liem. He dragged her from her car, through the garage, and upstairs to his bedroom in order to accomplish that purpose. The unlawful imprisonment facilitated the rape.

We disagree with *State v. Rattana Keo Phuong* because the test of prejudice, for purposes of ineffective assistance of counsel, is not whether a reasonable possibility exists as to whether the sentencing court would have counted the two crimes as one. Instead, the offender must establish that the sentencing court would have or probably would have scored the two crimes as one. "Probably" is a higher burden than "reasonably possible."

Criminal Filing Fee

Thomas Swarers also contends that the trial court committed error when imposing on him the legal financial obligation of a $200 criminal filing fee. Although the

9

No. 36066-1-III
*State v. Swarers*

sentencing court did not commit error at the time of sentencing, we agree the amount should be remitted.

Although mandatory when imposed, the criminal filing fee is no longer mandatory under recent legislation as explained in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). The trial court found Thomas Swarers indigent. As a result, Swarers asks that we strike the criminal filing fee from his judgment and sentence. The State concedes the fee should be struck. We accept the State's concession and, pursuant to *Ramirez*, remand for the trial court to strike the fee. Swarers need not be present at any hearing to strike the financial obligation.

## CONCLUSION

We affirm Thomas Swarers's sentence, except that we remand for the sentencing court to strike the criminal filing fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J. (result only)

_____
Siddoway, J.

10

APPENDIX

The law assigns courts the task of assaying the similarity between criminal acts or crimes for at least three purposes: double jeopardy, merger of crimes, and calculating an offender score. In the first two instances, a finding of similarity between two crimes committed by a defendant may lead to the vacation of one crime. In the third instance, a finding may reduce an offender's sentence by reducing the offender score. In order to assess whether Thomas Swarers's trial counsel performed ineffectively, we must consider the underlying law of "same criminal conduct" for purposes of sentencing.

Even if two convictions may not constitute the same crime for purposes of double jeopardy such as to erase one of the convictions, the offender may reduce his sentence by successfully showing the crimes arise from the same misconduct. *State v. Tili*, 139 Wn.2d 107, 124, 985 P.2d 365 (1999). Double jeopardy and same criminal conduct analyses are similar, yet distinct and separate inquiries. *State v. Chenoweth*, 185 Wn.2d 218, 222, 370 P.3d 6 (2016); *State v. French*, 157 Wn.2d 593, 611-12, 141 P.3d 54 (2006). We assume the simultaneous similarity and distinctiveness between legal concepts extends to a comparison between the merger doctrine and sentencing. *State v. Lessley*, 118 Wn.2d 773, 775, 827 P.2d 996 (1992).

Under double jeopardy and merger analysis, we determine whether one act or course of conduct can constitute two convictions. *State v. Chenoweth*, 185 Wn.2d at 222

(2016). Under the same criminal conduct analysis, we determine whether two convictions warrant separate punishments. *State v. Chenoweth*, 185 Wn.2d at 222. Despite this statement of purpose, no Washington decision has examined whether the rationale behind the same criminal conduct rule fits the circumstances of the offender's convictions or whether the two or more crimes warranted separate or unified punishment. Policy considerations do not enter the decisions.

When sentencing an offender for one or more felonies, the trial court must calculate the defendant's offender score, which score influences the standard sentence range. The sentencing court computes an offender's score based on the number of current and prior convictions. RCW 9.94A.525, .589(1)(a); *State v. Aldana Graciano*, 176 Wn.2d 531, 535-36, 295 P.3d 219 (2013). If the court finds that some of the current offenses encompass the same criminal conduct, the sentencing court shall count those current offenses as one crime. RCW 9.94A.589(1)(a); *State v. Aldana Graciano*, 176 Wn.2d at 536. The relevant portion of RCW 9.94A.589(1)(a) declares:

> That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . . "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

We construe RCW 9.94A.589(l)(a) narrowly to disallow most assertions of same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d at 540; *State v. Palmer*, 95 Wn. App. 187, 190-91, 975 P.2d 1038 (1999).

12

The focal sentence in RCW 9.94A.589(1)(a) directs the sentencing court to concentrate on the offender's criminal intent, the identity of the victim or victims, and the location and timing of the crimes when adjudging whether the crimes entail the same criminal conduct for purposes of sentencing. *State v. Aldana Graciano*, 176 Wn.2d at 536 (2013). In 1987, the legislature added this sentence to the statute to help define "same criminal conduct." LAWS OF 1987, ch. 456, § 5, at 1980; *State v. Dunaway*, 109 Wn.2d 207, 216, 743 P.2d 1237, 749 P.2d 160 (1987). Before the 1987 amendment, the statute simply read in relevant part:

> Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history.

*State v. Dunaway*, 109 Wn.2d at 213 (1987) (quoting former RCW 9.94A.400(1)(a), *recodified as* RCW 9.94A.589(1)(a) (LAWS OF 2001, ch. 10, § 6)).

All Washington decisions since 1988 about same criminal conduct center on one or more of three elements: the same criminal intent, the same time and place, and the same victim. Since time and place remain distinct concepts, the test actually holds four elements. Regardless, the defendant bears the burden of establishing all prongs of the test. *State v. Aldana Graciano*, 176 Wn.2d 531 (2013); *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994); S*tate v. Wright*, 183 Wn. App. 719, 733, 334 P.3d 22 (2014). If any element is missing, the sentencing court must count the offenses separately when calculating the offender score. *State v. Vike*, 125 Wn.2d at 410; *State v. Knight*, 176 Wn.

13

App. 936, 959, 309 P.3d 776 (2013). The burden being placed on the offender bears importance in our analysis.

Deciding whether crimes involve the same intent, time, place, and victim often involves factual determinations. *State v. Aldana Graciano*, 176 Wn.2d at 536 (2013). Based, in part, on the need to review and weigh facts, this reviewing court will not disturb the sentencing court's decision unless the sentencing court abuses its discretion or misapplies the law, the latter which by definition is an abuse of discretion. *State v. Aldana Graciano*, 176 Wn.2d at 531; *State v. French*, 157 Wn.2d 593, 613, 141 P.3d 54 (2006); *State v. Elliott*, 114 Wn.2d 6, 17, 785 P.2d 440 (1990). Remarkably, unlike other areas of the law, our deference extends beyond the sentencing court's fact finding. As reviewed later, appellate decisions announce various legal tests to apply. Our deference to the sentencing court even extends to its choice of legal tests. *State v. Burns*, 114 Wn.2d 314, 788 P.2d 531 (1990); *State v. Kloepper*, 179 Wn. App. 343, 317 P.3d 1088 (2014); *State v. Rodriguez*, 61 Wn. App. 812, 812 P.2d 868 (1991). In essence, we defer to the sentencing court's choice of law, and the sentencing court may choose the test that fits the result it wants.

Because Thomas Swarers never asked the sentencing court to find same criminal conduct with regard to his two convictions, the principle of deference to the trial court lacks direct application in this appeal. Nevertheless, the principle indirectly and significantly increases the burden on Swarers to show ineffective assistance of counsel.

We are less likely to rule that the sentencing court would have accepted his same criminal conduct argument because we would need to defer to the trial court's factual determinations and inferences from those facts, which determinations and inferences could disfavor Swarers. *State v. Freeman*, 118 Wn. App. 365, 76 P.3d 732 (2003), *aff'd*, 153 Wn.2d 765, 108 P.3d 753 (2005). Because the sentencing court holds discretion to weigh varying factors and even to choose among varying tests to apply, we would also need to defer to the trial court if evidence supported one, but not all, same criminal conduct tests, which one test could disfavor Swarers.

Because the offender must establish all three to four elements of same criminal conduct, we need not address all elements if one element goes missing. For this reason, we focus only on the first element of the test: same criminal intent, a test often referred to as similar intents.

Because the offender must show that he possessed the same intent when committing two discrete crimes, Washington cases naturally inquire to what extent the criminal intent of the defendant changed from one crime to the next. *State v. Tili*, 139 Wn.2d at 123 (1999). Under this analysis, the offender must intend to commit one crime, end this intent, and then form a new intent to commit another crime in order to have different intents. Unfortunately, no Washington decision recognizes that, when committing a crime, an offender may hold more than one intent at the same time or possess mixed intent when committing numerous crimes. We wonder if one's mind ever

15

compartmentalizes intent such that an intent to commit one crime could end and a later intent to commit a related crime, particularly a crime committed at the same time and place, begins. Washington decisions have never conducted a psychological inquiry or reviewed psychology literature when evaluating same criminal intent. But in order to avoid rulings of same criminal conduct, courts readily find that intent instantaneously changed from one crime to another or, if the intent to commit the second crime remained the same from the first crime but adds a second intent, the offender has actually formed a new intent that defeats a finding of same intents or same criminal conduct.

All Washington cases hold that the sentencing court views criminal intent objectively, rather than inquiring as to the offender's subjective intent. *State v. Tili*, 139 Wn.2d at 123 (1999); *State v. Dunaway*, 109 Wn.2d at 215 (1987); *State v. Rodriguez*, 61 Wn. App. at 816 (1991). We do not read the offender's mind, but assess whether the criminal intent, objectively viewed, changed from one crime to the next. *State v. Vike*, 125 Wn.2d at 411 (1994). Still, the reviewing court will sometimes consider testimony of the offender as to his subjective and respective motives for committing two or more crimes or speculate as to the accused's subjective intent.

When concentrating on same criminal intent, we find a bewildering array of case law that announces various abstruse tests of sameness, that sometimes adopts conflicting rules of law, and that occasionally issues inconsistent opinions. The law awaits a unifying test from the Washington Supreme Court.

We discern 10 nonexclusive tests of same criminal intent:

1. *Statutory mens rea test of same criminal intent*—The court, when determining an intent and whether the intent changes from one crime to another, objectively views each crime's underlying statute and determines whether the required intents are the same or different for each count.  Under this principle, if the defendant commits the same crime twice, both crimes had the same criminal intent.  *State v. Maxfield*, 125 Wn.2d 378, 886 P.2d 123 (1994); *State v. Lessley*, 118 Wn.2d at 778 (1992); *State v. Lewis*, 115 Wn.2d 294, 301, 797 P.2d 1141 (1990); *State v. Dunaway,* 109 Wn.2d at 215 (1987); *State v. Latham*, 3 Wn. App. 2d 468, 416 P.3d 725, *review denied*, 191 Wn.2d 1014 (2018); *State v. Price*, 103 Wn. App. 845, 855, 14 P.3d 841 (2000); *State v. Ramirez Hernandez*, 95 Wn. App. 480, 976 P.2d 165 (1999); *State v. Rodriguez*, 61 Wn. App. at 816 (1991).

2. *Objective view of facts test of same criminal intent*—If the mens rea for each crime matches, the court still objectively views the facts usable at sentencing to determine whether a defendant's intent was the same or different with respect to each count.  *State v. Price*, 103 Wn. App. at 857 (2000); *State v. Ramirez Hernandez*, 95 Wn. App. at 484 (1999); *State v. Rodriguez*, 61 Wn. App. at 816 (1991).

3. *Legislative purpose test of same criminal intent*—A court should identify the reasons behind the legislature prohibiting the respective criminal acts and determine if the purposes behind each crime coincide. *State v. Chenoweth*, 185 Wn.2d at 224 (2016).

4. *Objective criminal purpose test of same criminal intent*—The court determines if the offender's objective criminal purpose changes from committing the first crime to the second crime.  *State v. Haddock*, 141 Wn.2d 103, 3 P.3d 733 (2000); *State v. Deharo*, 136 Wn.2d 856, 966 P.2d 1269 (1998); *State v. Williams*, 135 Wn.2d 365, 957 P.2d 216 (1998); *State v. Kloepper*, 179 Wn. App. at 357 (2014); *State v. Knight*, 176 Wn. App. 936 (2013); *State v. Rattana Keo Phuong*, 174 Wn. App. at 546 (2013); *State v. Nysta*, 168 Wn. App. 30, 275 P.3d 1162 (2012); *State v. Garza-Villarreal*, 123 Wn.2d 42, 864 P.2d 1378 (1993); *State v. Calvert*, 79 Wn. App. 569, 903 P.2d 1003 (1995); *State v. Anderson*, 72 Wn. App. 453, 864 P.2d 1001 (1994); *State v. Walden*, 69 Wn. App. 183, 847 P.2d 956 (1993); *State v. Adame*, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990).

5. *Furtherance test of same criminal intent*—The two crimes are the same for purposes of the offender score if the defendant used the first crime to accomplish the second crime. *State v. Vike*, 125 Wn.2d at 411 (1994); *State v. Collicott*, 118 Wn.2d 649, 668-69, 827 P.2d 263 (1992); *State v. Dunaway*, 109 Wn.2d 207 (1987); *State v. Rattana Keo Phuong*, 174 Wn. App. 494 (2013); *State v. Taylor*, 90 Wn. App. 312, 950 P.2d 526 (1998); *State v. Boze*, 47 Wn. App. 477, 735 P.2d 696 (1987); *State v. Edwards*, 45 Wn. App. 378, 725 P.2d 442 (1986), *overruled on other grounds by State v. Dunaway*, 109 Wn.2d 207 (1987).

6. *Furtherance corollary test of same criminal intent*—The corollary declares that two crimes are similar in intent if the underlying conduct of the offender furthers both crimes, not necessarily that one crime furthers the other crime. *State v. Wright*, 183 Wn. App. at 734 (2014).

7. *Intimately related crimes test of same criminal intent*—The two crimes should be scored as one if the crimes are intimately related. *State v. Burns*, 114 Wn.2d at 318 (1990); *State v. Dunaway*, 109 Wn.2d 207 (1987); *State v. Adame*, 56 Wn. App. 803 (1990); *State v. Edwards*, 45 Wn. App. 378 (1986).

8. *Nearly simultaneous occurrence of crimes test of same criminal intent*—Two crimes entail the same criminal intent when the crimes occurred simultaneously or nearly simultaneously. *State v. Tili*, 139 Wn.2d 107 (1999); *State v. Porter*, 133 Wn.2d 177, 942 P.2d 974 (1997); *State v. Edwards*, 45 Wn. App. 378 (1986); *State v. Taylor*, 90 Wn. App. 312 (1998).

9. *Same scheme or plan test of same criminal intent*—Two crimes involve the same criminal intent if the crimes constitute part of the same scheme or plan. *State v. Williams*, 135 Wn.2d 365 (1998); *State v. Vike*, 125 Wn.2d at 411 (1994); *State v. Calvert*, 79 Wn. App. at 578 (1995); *State v. Rodriguez*, 61 Wn. App. at 816 (1991); *State v. Rienks*, 46 Wn. App. 537, 538-40, 731 P.2d 116 (1987), *superseded on remand*, *noted at* 51 Wn. App. 1042 (1988).

10. *Opportunity to reflect test of same criminal intent*—If the accused had an opportunity to reflect between crimes, the crimes do not

possess the same intent. *State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011); *State v. Munoz-Rivera*, 190 Wn. App. 870, 889, 361 P.3d 182 (2015); *State v. Price*, 103 Wn. App. at 855 (2000); *In re Personal Restraint of Rangel*, 99 Wn. App. 596, 996 P.2d 620 (2000); *State v. Palmer*, 95 Wn. App. 187 (1999); *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997).

We first review and contrast the various tests of similar intents. In so doing, we scrutinize most, but not all, Washington decisions addressing same criminal intent. We find no foreign decisions helpful, because no other State employs the phrase "same criminal conduct" for purposes of sentencing. We later apply the facts behind Thomas Swarers'ss two convictions to the differing rules.

No Washington decision has yet to open a dictionary when determining the meaning of similar intents or criminal intent. We offer excerpts from dictionaries to aid in deciphering same criminal intent. One dictionary defines "intent" as:

> 1a **:** the act or fact of intending: PURPOSE *especially* **:** the design or purpose to commit a wrongful or criminal act . . .
> b **:** the state of mind with which an act is done **:** VOLITION
> 2 **:** a usually clearly formulated or planned intention . . .

MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/intent (last visited Dec. 2, 2019). *Black's Law Dictionary* defines "intent" as:

> The state of mind accompanying an act, esp. a forbidden act. • While motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates the law exists, motive becomes immaterial. Cf. MOTIVE; SCIENTER.

19

BLACK'S LAW DICTIONARY 964 (11th ed. 2019).  Thus, the lay dictionary emphasizes the

reason or motive behind the act, while the legal dictionary discounts motive and purpose

and highlights the will to perform the act.  In turn, the legal dictionary defines "criminal

intent" as:

> 1. MENS REA.
> 2. An intent to commit an actus reus without any justification, excuse, or other defense. — Also termed *felonious intent.*  See *specific intent*.

BLACK'S LAW DICTIONARY 964 (11th ed. 2019).  Finally, *Black's Law Dictionary*

defines "mens rea" as:

> The state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime <The mens rea for theft is the intent to deprive the rightful owner of the property>.  Also termed *mental element*; *criminal intent*; *guilty mind. . . .*

BLACK'S LAW DICTIONARY 1181 (11th ed. 2019).

Under a Washington statute, the defendant acts with a particular intent when he or

she acts "with the objective or purpose to accomplish a result which constitutes a crime."

RCW 9A.08.010(1)(a).  This statute may conflate the concepts of intent and objective.

The dictionary defines "objective" as "an aim, goal, or end of action."  MERRIAM-

WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/objective

(last visited Dec. 2, 2019).  The same dictionary as previously written defines "intent" as

"PURPOSE . . .; the state of mind with which an act is done."  MERRIAM-WEBSTER

ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/intent (last visited

20

Dec. 2, 2019). Thus, the objective is the result wanted, while the intent is the reason for wanting the result. Washington case law evidences a tension between the goal desired and the purpose for the goal when examining same criminal intent for purposes of sentencing. Washington case law also displays a pull between the will to act and the goal or purpose behind the act.

In line with legal dictionary definitions and in conformance with the statute, RCW 9A.08.010(1)(a), some Washington decisions look at the underlying statutes and the mens rea necessary to commit each crime. *State v. Lessley*, 118 Wn.2d at 778 (1992); *State v. Lewis*, 115 Wn.2d at 301 (1990); *State v. Dunaway*, 109 Wn.2d at 215 (1982); *State v. Price*, 103 Wn. App. at 855 (2000); *State v. Rodriguez*, 61 Wn. App. at 816 (1991). The court, when determining an intent and whether the intent changes from one crime to another, objectively views each crime's underlying statute and determines whether the required intents are the same or different for each count. *State v. Price*, 103 Wn. App. at 857 (2000); *State v. Ramirez Hernandez*, 95 Wn. App. at 484 (1999). We call this rule the statutory mens rea principle of same criminal intent. If the intents overlap, the crimes constitute the same criminal intent. *State v. Rodriguez*, 61 Wn. App. at 816 (1991). Under this principle, if the defendant commits the same crime twice, both crimes had the same criminal intent. *State v. Walden*, 69 Wn. App. 183 (1993). When one of the two crimes charged has no statutory mental element and the other one does,

the two crimes' statutory intent are different. *State v. Ramirez Hernandez*, 95 Wn. App. at 485 (1999).

*State v. Rodriguez*, 61 Wn. App. 812 (1991) purportedly illustrates the use of the mens rea found in the underlying criminal statutes. Law enforcement officers watched Martin Rodriguez engage in what appeared to be a drug transaction on the street. The officers arrested Rodriguez and found both cocaine and heroin in his sock. The State convicted him with possession of a controlled substance with intent to deliver, to wit, cocaine and with possession of a controlled substance with intent to deliver, to wit, heroin. The sentencing court deemed the two convictions to be the same criminal conduct for purposes of the offender score. This court first reviewed the underlying criminal statutes to determine if the intents overlapped. Intent to deliver by definition is a statutory element of the crime of possession of a controlled substance with intent to deliver. Former RCW 69.50.401(1)(a), (2) (1988).

The *Rodriguez* court asked if a court should, when deciphering same criminal intent, distinguish between the number of drugs possessed by the offender and the number of deliveries intended by the offender. Former RCW 69.50.401(1) provides that it is unlawful to "possess with intent to . . . deliver, a controlled substance." Under this statute, the accused commits the crime with an intent to deliver *any* controlled substance and the identity of the substance is immaterial. If the accused possessed two different drugs, but planned to deliver them in one transaction, the two crimes involve the same

22

intent, the intent to deliver a controlled substance. If the accused possessed only cocaine but intended to sell the cocaine during two separate transactions, the two crimes entail different intents, an intent to deliver at the time and place of one transaction and an intent to deliver at the time and place of the other transaction. Such an analysis overlaps with the same criminal conduct element of same time and place such that the analysis of same criminal intent becomes irrelevant. Regardless, because the record lacked evidence of whether Martin Rodriguez intended to deliver the cocaine and heroin in separate transactions, that court ruled that the two convictions involved the same criminal intent. The *Rodriguez* 1991 ruling probably conflicts with the Supreme Court's later holding, in *State v. Aldana Graciano*, 176 Wn.2d 531 (2013), that the offender carries the burden of showing the same criminal intent, rather than the State excluding the possibility of different intents. Also, despite announcing a statutory mens rea test, the court would reject the test if the offender held the same intents for two crimes, but committed the crimes at a different time or place.

*State v. Ramirez Hernandez*, 95 Wn. App. 480 (1999) illustrates the reviewing court employing the statutory mens rea test of same criminal intent. Jose Hernandez appealed his offender score for sentencing on two convictions: possession of cocaine with intent to deliver and simple possession of methamphetamine. This court affirmed the sentencing court's ruling that the two crimes did not constitute the same criminal conduct for sentencing purposes. A search of Hernandez's residence produced 2.3 grams of

23

cocaine, 0.9 grams of methamphetamine, drug paraphernalia, and $1,143 in cash. The State did not dispute that Hernandez's two crimes involved the same victim and were committed at the same time and place. The only issue was whether both crimes involved the same intent.

The *Ramirez Hernandez* court noted that specific intent to deliver a controlled substance is a statutory element of the crime of possession with intent to deliver. Former RCW 69.50.401(1)(a), (2). In contrast, the crime of simple possession has no corresponding statutory mens rea element but, except for an unwitting possession defense, is a strict liability crime. RCW 69.50.4013. Thus, the two crimes involved different criminal intents. The court noted an anomalous result. A first time offender convicted of simultaneous, multiple counts of possession with intent to deliver, which involves the same criminal conduct, will face a lower offender score than a similar defendant convicted of one count of possession with intent to deliver and one count of simple possession, which entails distinct criminal intents.

In *State v. Latham*, 3 Wn. App. 2d 468 (2018), Avery Latham confined his victim before strangling her. On appeal, Latham contended the trial court should have scored his kidnapping and attempted murder charges as the same criminal conduct. This court rejected the argument based on the mens rea of the pertinent charging statutes. First degree kidnapping requires an intentional abduction with intent to facilitate the commission of a felony. The State identified attempted first degree murder as the

24

underlying felony. RCW 9A.40.020(1)(b). Attempted first degree murder, however, requires the specific intent to cause the death of another person. RCW 9A.32.030; RCW 9A.28.020. Thus, the two crimes necessitated discrete intents.

*State v. Maxfield*, 125 Wn.2d 378 (1994) also illustrates the reviewing court discerning and comparing the mens rea of the underlying crimes. Law enforcement officers searched Mark Maxfield's house and discovered a marijuana grow operation and a large quantity of dried, packaged marijuana contained in zip-lock bags. The State convicted the defendant with manufacture of an illegal substance and possession with intent to deliver. Thus, unlike in *State v. Rodriguez*, the State did not limit the charges to possession with intent to deliver. When sentencing, the trial court treated the two charges as separate criminal conduct. The Supreme Court affirmed. The high court reasoned that the mens rea for manufacturing entailed a past and present intent to grow marijuana, while the possession charge required a finding of intent to deliver in the future.

This court's ruling in *State v. Price*, 103 Wn. App. 845 (2000), conflicts with the statutory mens rea test of same criminal intent. Aleta Nakano, drove by a gas station with her boyfriend, Larry Hooper, when the two noticed a Silverado pickup truck slow and come to a stop in the middle of the road. Price's friend, Reade, exited the passenger's side of the pickup and jumped into the parking lot of the gas station. Nakano and Hooper observed Reade climb into an unattended idling Chevrolet pickup and drive from the gas station. When the owner of the pickup returned, Reade exited the Chevrolet and ran. He

25

did not return to the Silverado, and the Silverado sped away. Nakano, hoping to discern the Silverado's license number, followed the Silverado. The pickup parked in a gravel area on Deschutes Parkway, and Nakano pulled her car off the road behind the truck. Claude Price, the driver of the Silverado, exited the truck and pointed a gun at the windshield of Nakano's vehicle. Nakano and Hooper ducked, and Nakano drove away. Price shot a single shot that lodged in Nakano's car's passenger's headrest. The Silverado followed her. A speeding Nakano drove down Deschutes Parkway and onto Interstate 5. The Silverado pursued Nakano's vehicle onto the interstate and pulled alongside the vehicle. Nakano and Hooper again ducked. Price fired two more gunshots respectively into the passenger side window and the driver's door. The Silverado moved into the interstate fast lane, while Nakano quickly exited the interstate and drove to the Olympia Police Department. A jury convicted Price of, among other crimes, four counts of attempted first degree murder. The four counts arose from the shooting at Nakano on Deschutes Parkway, the shooting at Hooper on Deschutes Parkway, the shooting at Nakano on Interstate 5, and the shooting at Hooper on Interstate 5.

On appeal in *State v. Price*, this court affirmed the trial court's conclusion that the shooting on Deschutes Parkway involved a distinct criminal intent from the shooting on Interstate 5. The court ignored the verity that all four counts of first degree murder required the same mens rea. The court instead emphasized that Claude Price, after shooting on Deschutes Parkway, returned to his truck and decided to pursue Nakano and

Hooper onto the interstate. Thus, Price gained time to form a new criminal intent. Furthermore, the method by which Price could commit the murders changed between the first and second incidents. In the first incident, Price attempted to shoot the driver, Nakano, while standing next to the vehicle. With the second incident, Price could have accomplished the murders by killing only the driver, scaring the driver, or by shooting a vital operating part of the car and causing an explosion or wreck. Thus, the scheme was substantially different from the first shooting incident.

Some of the decisions do not end the assessment of same or different criminal intent by identifying whether the mens rea under the charging statutes coincide. Instead, if the mens rea for each crime matches, the court still objectively views the facts usable at sentencing to determine whether a defendant's intent was the same or different with respect to each count. *State v. Price*, 103 Wn. App. at 857 (2000); *State v. Ramirez Hernandez*, 95 Wn. App. at 484 (1999); *State v. Rodriguez*, 61 Wn. App. at 816 (1991). This rule may allow the sentencing court to consider the subjective intent of the offender. If the facts, objectively viewed, can only support a finding that the defendant had the same criminal intent with respect to each count, then the counts constitute the same criminal conduct. *State v. Rodriguez*, 61 Wn. App. at 816 (1991). If the facts, objectively viewed, can only support a finding that the defendant had different criminal intents with respect to each count, then the counts constitute different criminal conduct. *State v. Rodriguez*, 61 Wn. App. at 816 (1991). If the facts are sufficient to support either

27

finding, then the matter lies within the trial court's discretion, and an appellate court will defer to the trial court's determination of what constitutes the same criminal conduct when assessing the appropriate offender score. *State v. Burns,* 114 Wn.2d at 317 (1990); *State v. Rodriguez*, 61 Wn. App. at 816 (1991).

We find the additional test of objective facts unhelpful because no Washington decision identifies the controlling facts for purposes of weighing same criminal intent. For example, in *State v. Maxfield*, 125 Wn.2d 378 (1994), already discussed, the Supreme Court considered the convictions for manufacture of an illegal substance and possession with intent to deliver to entail differing criminal intents. Nevertheless, the same facts encompassed both charges. Mark Maxfield's house contained a marijuana grow operation and a large quantity of dried, packaged marijuana contained in ziplock bags. Perhaps the court wanted to distinguish between the presence of the bags and equipment utilized for growing the vegetable, but the court did not mention such or identify the equipment found in the home.

*State v. Price*, 103 Wn. App. 845 (2000), previously discussed, may be an example of the court employing the objective facts test. The shooting on Deschutes Parkway entailed differing objective facts from the shooting on Interstate 5.

We label a third test employed by Washington courts for assaying same criminal intent as the legislative purpose test. Under this test, a court identifies the reasons behind the legislature making an act a crime. *State v. Chenoweth*, 185 Wn.2d at 224 (2016).

*State v. Chenoweth*, 185 Wn.2d 218 (2016) illustrates the legislative purpose test. Chad Chenoweth argued that child rape and incest, based on a single act, constituted the same criminal conduct for purposes of calculating his offender score. Chenoweth committed one act. The incident occurred at the same time and place and against the same victim, leaving only the intent element to decide. Chenoweth argued that the two crimes entailed the same criminal intent: sexual intercourse with his daughter. The court, however, after viewing the respective statutes, determined the intent differed for the crimes of rape of a child and incest. The court emphasized that the legislature intended to punish incest and rape as separate offenses, even though committed by a single act. The intent to have sex with someone related to you differs from the intent to have sex with a child. Thus, Chenoweth's single act comprised separate and distinct statutory criminal intents.

Other Washington decisions, despite the dictionary definitions of "intent," decline to treat "intent" as the particular mens rea element of the specific crime, but rather define the term, as employed in RCW 9.94A.589(1)(a), as the defendant's objective criminal purpose in committing the crime. *State v. Kloepper*, 179 Wn. App. at 357 (2014); *State v. Rattana Keo Phuong*, 174 Wn. App. at 546 (2013); *State v. Adame*, 56 Wn. App. at 811 (1990). We refer to this test as the objective criminal purpose test. For example, the intent of robbery is to acquire property, and the intent of attempted murder is to kill someone. *State v. Adame*, 56 Wn. App. at 811 (1990). This analysis fuses the concept of

29

intent with objective, will with purpose, and the result wanted with the reason for wanting the result.

*State v. Haddock*, 141 Wn.2d 103 (2000) illustrates the objective criminal purpose test. The State convicted Mario Haddock of a single count of possession of stolen property, a computer, and six counts of possession of a stolen firearm. Someone took all seven items from one residence, and Haddock eventually possessed the stolen goods. When calculating Haddock's offender score, the sentencing court scored the single count of possession of a stolen computer as one and scored the remaining six counts of possession of stolen firearms as another one. The Supreme Court held that the possession of stolen property and all six counts of possession of a stolen firearm should be scored only as one point. All seven convictions entailed the same criminal conduct. Haddock's single intent to possess stolen property motivated the conduct underlying all seven convictions. The court rejected the Court of Appeals' reasoning that, because no crime furthered any other crime, Haddock's convictions for possession of stolen property and possession of stolen firearms did not share the same criminal intent.

*State v. Calvert*, 79 Wn. App. 569 (1995) also illustrates the criminal objective test. John Calvert forged his mother-in-law's checks and deposited six checks in his bank account. He deposited two checks on the same day. Apparently the four remaining checks were respectively deposited on differing days. Calvert pled guilty to six counts of forgery but asked the trial court to score two of the counts as one crime for purposes of

sentencing. The State emphasized that, although Calvert deposited the checks on the same day, he could not have deposited them simultaneously. The sentencing court scored the two forgeries as involving the same criminal conduct. This court affirmed. Calvert deposited the two checks on the same day, as part of the same scheme, with the same criminal objective: to defraud. The court did not address whether all six counts should be scored as one because all forgeries and deposits involved the same criminal objective.

*State v. Garza-Villarreal*, 123 Wn.2d 42 (1993) involved two consolidated cases, each which promoted the criminal objective test. In each case, the accused possessed two different controlled substances. One defendant was convicted of separate counts of possession with intent to deliver. The other defendant was convicted of two counts of delivery. Each defendant engaged in one transaction. The Supreme Court held that, for each defendant, the separate counts should be scored as one because they arose from the same criminal intent. The crimes, objectively viewed, furthered one overall criminal purpose. The fact that the two charges involved different drugs did not by itself evidence any difference in intent. The possession of each drug furthered the overall criminal objective of delivering controlled substances in the future. The sale or intent to sell two different drugs did not indicate different objectives.

*State v. Anderson*, 72 Wn. App. 453 (1994) employed the criminal objective test. The State convicted Kery Anderson with assault on a law enforcement officer and escape. Corrections Officer Timothy Bergman transported inmate Anderson from the King

31

County jail to Harborview Medical Center. On the way to the hospital, Anderson freed his hands from the restraints. When Bergman opened the door, to walk Anderson to the hospital entrance, Anderson attacked Bergman and attempted to grab Bergman's weapon. An epic struggle ensued. Bergman eventually wrested control of his gun and fired a shot that grazed Anderson's finger and shattered the patrol car's windshield. Anderson then fled the scene. On appeal, Anderson argued that the court should deem assault and escape as the same criminal conduct. This court agreed. When addressing same criminal intent, the court emphasized that Anderson committed the assault on Bergman in order to further his escape from Bergman's custody. Without incapacitating Bergman or at least neutralizing Bergman's firearm, Anderson would have been unable to complete his escape. Objectively viewed, Anderson's criminal intent was the same from one offense to the other: a desire to escape Bergman's custody. The trial court abused its discretion in counting the offenses separately for sentencing purposes.

In *State v. Rattana Keo Phuong*, 174 Wn. App. 494 (2013), this court employed the criminal objective test in addition to another test. Rattana Keo Phuong's ex-wife, Liem, visited their children at Phuong's residence. As the former wife prepared to leave, Phuong called her a "'hooker'" and asked her for sex. *State v. Rattana Keo Phuong*, 174 Wn. App. at 500 (2013). The ex-wife refused and left the house. Phuong followed her out of the house and dragged her from the car, through the garage, and back into the house. Phuong pulled the ex-wife upstairs to his bedroom, while she kicked and

32

screamed and the children pleaded for their father to stop. Phuong pulled her into his

bedroom and locked the door. Phuong tried to pull down her pants and tore the crotch

seam of the pants. He removed his shirt and attempted to mount her, while she kicked

and fought back. Phuong successfully prevented her from escaping by pinning her down

by her wrists and telling her that he still loved her and wanted to have sex with her.

Phuong did not stop until he heard his neighbor knocking on the door downstairs.

In *State v. Rattana Keo Phuong*, Phuong's trial counsel did not argue that the

convictions for unlawful imprisonment and attempted rape should be scored as one

crime. This court concluded that a reasonable possibility existed that the sentencing court

would have found that the attempted rape and unlawful imprisonment offenses

constituted the same criminal conduct had Phuong's counsel so argued. The offenses

were committed at the same time and place and involved the same victim. Moreover, a

sentencing court could determine that the offenses were committed with the same

criminal intent. Phuong's "objective criminal purpose" in committing each offense, the

court could conclude, was to rape Liem. He dragged her from her car, through the

garage, and upstairs to his bedroom in order to accomplish that purpose.

*State v. Adame*, 56 Wn. App. 803 (1990) silently employs the criminal objective

test. Cesar Adame argued that convictions for possession of a controlled substance and

unlawful possession of a short firearm or pistol should have counted as one crime in

calculating his offender score. Adame observed that the statutory language of neither

crime required any intent. He emphasized that he committed the crimes at the same time and place. This court noted the irrelevance of the absence of any mens rea element for the crimes. The two crimes did not involve the same intent because the purpose of possession of the controlled substance was to use or sell it. The court did not know the purpose of possessing a firearm, but presumably believed Adame did not possess the weapon in order to effectuate his possession of the controlled substance. The court's asking about Adame's purpose in possessing the weapon violates the rule that the court determines the offender's objective, not subjective, intent. Maybe the court should have taken judicial notice that the dangerous activity of possessing illegal substances leads one to carry a firearm.

*State v. Vike*, 125 Wn.2d 407 (1994) follows the criminal objective test. Lasse Vike possessed heroin and clonazepam at the same time on his person. He pled guilty to two counts of possession of a controlled substance. He argued that the two crimes entailed same criminal conduct. The Supreme Court only addressed the intent requirement. The court noted that possession with intent to deliver two different controlled substances at the same time constituted the same criminal intent. There was one overall criminal purpose in possessing the two controlled substances.

*State v. Williams*, 135 Wn.2d 365 (1998) also applies the criminal objective test. George Williams sold rock cocaine to two police informants in one controlled buy operation. After one of the informants contacted Williams to arrange the sale, both

informants met Williams at a residence where Williams sold ten rocks to each. A jury

subsequently convicted Williams of two counts of unlawful delivery. He argued at

sentencing that the counts encompassed the same criminal conduct. The State argued

that the deliveries were separate because they occurred consecutively and involved two

people. The sentencing court agreed with the State. The Supreme Court disagreed. The

two crimes occurred at the same time and place, and the "victim" of both drug sales was

the public at large, not the purchasers. The dispositive question was whether the counts

required the same criminal intent. The relevant inquiry was the extent to which the

criminal intent, objectively viewed, changed from one crime to the next. Both

convictions of delivery of a controlled substance required the same intent—to deliver

currently.

In *State v. Deharo*, 136 Wn.2d 856 (1998), the Supreme Court referred to the

criminal objective test as one of criminal intent. The State convicted Gustavo Deharo of

conspiracy to deliver heroin and possession of heroin with intent to deliver. The

Supreme Court held the two crimes to encompass the same criminal conduct. Tacoma

police officers observed Deharo selling drugs to several men. When police arrested him,

he carried six bindles of heroin and $318 in cash. His conspirator was a middleman in

some of the observed transactions. The court reasoned that the objective intent

underlying the charges of conspiracy to deliver heroin and possession of heroin with

35

intent to deliver corresponded. Deharo wished to deliver the heroin on his person or in the conspirators' possession. Both crimes involved the same heroin.

In *State v. Nysta*, 168 Wn. App. 30 (2012), this court addressed the criminal objective test and found that two crimes related in time entailed different objectives. Daven Nysta argued, on appeal, that his trial counsel performed deficiently for failing to contend that his convictions for second degree rape and felony harassment constituted the same criminal conduct for sentencing purposes. Nysta attacked his former girlfriend in her bedroom. Nysta grabbed her, threw her on a bed, and forced his fingers into her vagina and anus. When she tried to move off the bed, he kicked her in the face, punched and bit her, and repeated the rape with his fingers. Nysta repeatedly asked the former girlfriend about her dating others. Any time she answered him, he hit her in the face or arms. The victim heard her infant daughter crying in the next room. Nysta continued nonetheless with kicking, punching, and biting. Eventually, he accompanied the victim into the next room, so she could care for the baby. Nysta held the baby, told the lady to kneel, and urinated on her. Nysta then ordered her to take a shower. After the shower, Nysta took the former girlfriend and the baby back into the other room. While the child sat quietly by the wall, Nysta again asked his former girlfriend to identify the men she dated, and he again punched her in the face. He attempted intercourse, then made her sit on the floor and perform oral sex. He repeatedly hit her on the head while she performed

oral sex. The ordeal lasted two hours. At one point, Nysta threatened to kill the victim and her two children. This threat led to the felony harassment conviction.

In *State v. Nysta*, this court held that Nysta failed to sustain his claim of ineffective assistance of counsel because the sentencing court would likely not have found that the crimes shared the same criminal intent. The court noted that the objective of second degree rape was sexual intercourse and Nysta achieved the objective of sexual intercourse by means of his unrelenting use of physical force over a period of two hours. The threat of death, leading to the harassment conviction, held the independent objective of creating continuing fear and penalizing the former girlfriend from fraternizing with another man.

*State v. Knight*, 176 Wn. App. 936 (2013) follows the criminal objective test and holds that two related crimes possessed different intents or objectives. Amanda Christine Knight drove three acquaintances, Kyoshi Higashi, Clabon Berniard, and Joshua Reese, to a home, where the resident advertised on ubiquitous Craigslist for the sale of a wedding ring. The group intended to pilfer the ring by robbery. Knight backed in to the home's driveway to facilitate a quick escape. Higashi bore Knight's firearm. Knight and Higashi exited the car and met James Sanders, a resident of the house, outside and entered the residence with Sanders. Sanders handed an old wedding ring to Knight, who handed it to Higashi. Sanders' wife entered the room to help answer questions. Higashi revealed a large amount of cash and asked: "'How is this?'" He then pulled a handgun and threatened, "'How about this?'" *State v. Knight*, 176 Wn. App. at 942 (2013).

37

Sanders and his wife told Higashi and Knight to take whatever they wanted and to leave. Knight tied the wife's hands behind her back. Higashi tied Sanders' hands behind his back. Knight removed the wife's wedding ring from her finger. Knight or Higashi removed Sanders' wedding ring from his finger. Higashi and Knight ordered the couple to lie down on their stomachs on the floor. Through Knight's Bluetooth headset connection to the other two compatriots waiting in her car, Knight signaled the two to enter the home. Both possessed loaded guns. Knight and Higashi ransacked the house for other expensive items to collect. In the meantime, Berniard and Reese assaulted Sanders, his wife, and their two sons. Berniard held a gun to the wife's head, pulled back the hammer, began counting, and asked her: "'Where is your safe?'" *State v. Knight*, 176 Wn. App. at 943 (2013). The wife responded that they did not own a safe. Berniard kicked the wife in the head, called her a bitch, and threatened to kill her and her children. The wife concluded she would die. Eventually, the wife told the intruders that they kept a safe in their garage. While Berniard forced Sanders to the garage, Sanders broke free of his ties and beat Berniard. Berniard shot Sanders in the ear, knocking him unconscious. Either Reese or Berniard thereafter shot Sanders multiple times, thereby causing fatal internal bleeding. Following the gunshots, the four intruders fled. In addition to the rings, the robbers took a PlayStation, an iPod, and a cellular phone.

In *State v. Knight*, the State convicted Amanda Christine Knight of first degree robbery and felony murder of Sanders, first degree robbery and second degree assault of

38

the wife, and burglary for entering the Sanders' residence.  Knight asked that the two

crimes against Sanders be treated as the same criminal conduct and that the two crimes

against the wife be treated as the same criminal conduct.  She contended that her

objective intent throughout the incident never changed from completing the robbery.

The sentencing court rejected the request because the robbery of the ring ended before

the assault and the murder occurred.  The Supreme Court agreed with the trial court's

disposition of Knight's request.  The court rejected the notion that robbery and murder

share the same criminal intent for "same criminal conduct" offender score purposes.

The intent behind robbery is to acquire property, while the intent behind murder is to kill

someone.

In *State v. Walden*, 69 Wn. App. 183 (1993), John Walden was convicted of rape

and attempted rape.  After Walden forced the young victim to fellate him, Walden

unsuccessfully attempted to penetrate the boy's anus.  The attempt occurred immediately

after the end of fellatio.  In determining whether the two acts involved the same criminal

conduct, the *Walden* court reasoned that the criminal intent of the conduct comprising the

two charges was the same: sexual intercourse.  Accordingly, the two crimes of rape in the

second degree furthered a single criminal purpose.

In *State v. Grantham*, 84 Wn. App. 854 (1997), this court refused to apply the

same criminal objective test.  This court affirmed the trial court's finding that two rapes

were not the "same criminal conduct" for sentencing purposes.  James Grantham first

anally raped his victim. He then stood over her and threatened her not to tell. She begged him to stop and to take her home. He then argued with and physically assaulted the victim in order to force her to perform oral sex. All of Grantham's criminal conduct involved the same objective of sexual gratification. In addition to violating the same criminal objective test, the *Grantham* decision violated the statutory mens rea test.

*Grantham* and *Walden* each involve two sexual attacks, but entail opposite outcomes. One could distinguish *Grantham* from *Walden* on the basis that John Walden's last crime was an incomplete crime, but the Supreme Court has never distinguished the two cases on such grounds.

*State v. Boze*, 47 Wn. App. 477 (1987) defies the statutory mens rea test and the objective criminal purpose test. The State convicted Michael Boze of three counts of delivery of a controlled substance. He delivered cocaine to an undercover law enforcement officer on three occasions, February 5, February 23, and March 6, at his residence. He argued that, because he delivered cocaine to the same undercover agent and at the same location, all sales constituted the same criminal conduct. The court applied a test of whether Boze possessed an independent motive for each crime or, in the alternative, whether the objective of one of the crimes was to accomplish or complete the other. The court ruled against Boze because he independently accomplished the completion of each sale of cocaine. Boze randomly committed each crime as the opportunity arose. The court refused to recognize that the mens rea remained the same

40

for each sale.  The court failed to acknowledge that Boze sought to sell controlled substances on each occasion for the purpose of earning money.  The objective and intent never changed.

*State v. Dunaway*, 109 Wn.2d 207 (1987) contains mixed results with regard to the criminal objective test.  In *Dunaway*, the court heard three consolidated cases.  In *State v. Green*, Raymond Green entered a donut shop and pointed a gun at the employee.  Green told the employee to open the cash register.  The employee obeyed Green and handed Green $31.  While escaping, Green shot the employee twice.  A jury convicted Green of first degree robbery and attempted first degree murder.  In *State v. Franklin*, 46 Wn. App. 84, 729 P.2d 70 (1986), *rev'd*, *State v. Dunaway*, 109 Wn.2d 207 (1987), John Franklin entered a pizza parlor, showed the employee a knife, and demanded money from the till.  After taking the money, Franklin stabbed the employee twice in the back.  A jury found Franklin guilty of first degree robbery and attempted first degree murder.  Finally, in *State v. Dunaway*, James Dunaway entered a car with two ladies present.  He pulled a gun and ordered them to drive him to Seattle.  While on the drive to Seattle, Dunaway grabbed money from both women.  On arriving in the university district, Dunaway directed one of the women to enter a bank and withdraw her money for him.  When the lady did not return, Dunaway drove the car to some identified location and exited the car.  Dunaway pled guilty to two counts of first degree kidnapping and two counts of first degree robbery.

On appeal, in *State v. Dunaway*, the Supreme Court faced the question of whether the two respective crimes committed by each offender qualified for same criminal conduct treatment. The court denied Green's and Franklin's request for same criminal conduct sentencing. The court concluded that Green's and Franklin's respective intents behind robbery was to acquire property while the intent behind attempted murder was to kill someone. The court further concluded that the attempted murder did not further the robbery, despite any successful murder ending the victim's ability to report the crimes and identify the offender. The court, however, found Dunaway's crimes to be one crime for purposes of sentencing. Robbery was the objective of both crimes. We will later analyze *State v. Edwards*, 45 Wn. App. 378 (1986). When reading *Dunaway* and *Edwards* together, presumably a cover-up crime does not constitute the same criminal intent as the covered crime unless the covered crime continues during the cover-up.

Many cases declare that a sentencing court should measure a change in intent from one crime to another by determining whether one crime furthered the other. *State v. Vike*, 125 Wn.2d at 411 (1994); *State v. Collicott*, 118 Wn.2d at 668-69 (1992); *State v. Dunaway*, 109 Wn.2d 207 (1987); *State v. Edwards*, 45 Wn. App. 378 (1986). Stated differently, the two crimes are the same for purposes of the offender score if the defendant used the first crime to accomplish the second crime as opposed to the crimes being random. *State v. Boze*, 47 Wn. App. 477 (1987). We refer to this test as the furtherance principle. This principle lends itself to sequentially committed crimes, but

42

purportedly not to crimes occurring literally at the same. *State v. Vike*, 125 Wn.2d 407 (1994).

The first Washington decision to address the term "same criminal conduct" in the context of sentencing is *State v. Edwards*, 45 Wn. App. 378 (1986). The sentencing statute had yet to define same criminal conduct as being of similar intent, overlapping time and place, and the same victim. Nevertheless, later courts rely on the reasoning of *Edwards* and the Supreme Court mentioned that the teachings in *Edwards* coincide with the legislative intent of the 1987 amendment. *State v. Dunaway*, 109 Wn.2d at 215 (1987). When ruling that two distinct crimes constituted the same criminal conduct, the *Edwards* court emphasized that one crime furthered the commission of the other crime.

In *State v. Edwards*, James Edwards received a ride from his former work supervisor. While a passenger in the car, Edwards pulled a gun on the supervisor. The supervisor temporarily drove aimlessly and then pulled her car into a fire station parking lot. She yelled for help. A paramedic approached the car, but Edwards waved his gun at the man. The paramedic retreated. The State convicted Edwards with assault in the second degree by reason of pointing the gun at the paramedic and kidnapping in the second degree by reason of keeping the supervisor in the car.

James Edwards asked the sentencing court to calculate his sentence by scoring both crimes as one crime. The trial court refused. This court reversed. This court wrote, in part:

> Moreover, the assault was committed in furtherance of the kidnapping.

*State v. Edwards*, 45 Wn. App. at 382 (1986). The court impliedly concluded that Edwards's objective in committing the assault was to continue with the kidnapping, not to harm the paramedic. Nevertheless, the State must prove specific intent either to create apprehension of bodily harm or to cause bodily harm to convict one of assault in the second degree. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). The *Edwards* court impliedly decided that Edwards's intent to keep his former supervisor constrained prevailed over his intent to create apprehension of bodily harm to the paramedic. This analysis focused on Edwards's subjective intent and ignored the statutory mens rea principle and the criminal objective principle. The mens rea of assault differs from the mens rea for kidnapping. The *Edwards* court failed to note that, when waving the gun, Edwards had both the objective of frightening the paramedic in addition to the objective of preserving the kidnapping.

*State v. Taylor*, 90 Wn. App. 312 (1998) also illustrates the furtherance test. Chris Weiler stopped at a convenience store to buy gasoline. Rodney Murphy rode in the car. As Weiler exited his car, Jonathan Taylor hit Weiler in the face, knocking him back into the driver's seat. Taylor aimed a .22 rifle at Weiler's head. Michael Nicholson joined Taylor. Nicholson took the gun from Taylor and loaded it. Together, they reached into the vehicle, unlocked the back doors, and entered the back seat. Once inside, Nicholson

aimed the gun at Murphy's head and ordered Weiler to drive to Oakland Park. At the

park, Nicholson ordered Murphy to take off his coat and empty his pockets. At the same

time, Taylor restrained Weiler. After taking Murphy's coat, hat, and pocket knife, Taylor

and Nicholson left the car and crossed the street. As Weiler drove away, several bullets

hit the passenger side of the car. Neither victim saw who fired the gun.

On appeal, in *State v. Taylor*, Jonathan Taylor argued that the court should treat

the assault and kidnapping convictions as the same criminal conduct for sentencing

purposes. This court agreed. The assault and kidnapping happened at the same time and

place and involved the same victim. The evidence established that Taylor's objective

intent in committing the kidnapping was to abduct Murphy by the use or threatened use

of the gun and that his objective intent in participating in the second degree assault was to

persuade Murphy, by the use of fear, to not resist the abduction. The assault began at the

same time as the abduction, when Taylor and Nicholson entered the car. The assault

ended when the kidnappers exited the car and the abduction ended. The evidence

supported a conclusion that Taylor and Nicholson engaged in all assaultive behavior

during the kidnapping for the purpose of facilitating the abduction.

We already detailed the facts of *State v. Rattana Keo Phuong*, 174 Wn. App. 494

(2013) in our discussion of the criminal objective test. Rattana Keo Phuong dragged his

ex-wife, Liem, from a car, through the garage, and back into the house. Phuong tried to

pull down her pants, tearing the crotch seam of the pants. He removed his shirt and

attempted to mount her. Phuong successfully prevented her from escaping by pinning her down by her wrists and telling her that he still loved her and wanted to have sex with her. Phuong did not stop until he heard his neighbor knocking on the door downstairs. This court ruled that defense counsel performed deficiently when failing to urge the sentencing court that the convictions for unlawful imprisonment and attempted rape should be scored as one crime. This court concluded that a reasonable possibility existed that the sentencing court would have found that the unlawful imprisonment offense furthered the attempted rape.

In *State v. Kloepper*, 179 Wn. App. 343 (2014), this court found that some facts did not support application of the furtherance test. The State convicted Cody Kloepper with crimes of first degree rape, first degree burglary, and first degree assault. On appeal, Kloepper challenged the sentencing court's refusal to consider the first degree rape and first degree assault as being the same criminal conduct. Kloepper attacked a woman inside her apartment. Kloepper repeatedly struck her on the head with a metal bar. The two struggled, during which time the victim defecated in her pants. The victim told Kloepper that, if he intended to rape her, hurry and get it over with. Kloepper then made the woman get down on her knees, but he was unable to penetrate her with his penis. Kloepper used his fingers to penetrate her vagina and her anus. The parties agreed that the facts fulfilled the time, place, and victim elements of the same criminal conduct statute. The parties disputed whether the two offenses shared the same criminal intent.

In *State v. Kloepper*, this court affirmed the trial court's refusal to consider both crimes to hold the same criminal intent. Cody Kloepper argued that the assault furthered the rape and, hence, was not a separate and distinct offense. In his view, the assault overcame the anticipated resistance to the rape and was essential to the rape. This court noted that the trial court could have viewed the evidence that way. Because the trial court viewed and permissibly could view the evidence differently, however, this court would not overturn that decision. Kloepper never expressed any intent to engage in sexual intercourse until the victim broached the subject. Repeatedly striking a person on the head with a metal bar evinced an intent to cause serious physical injury rather than to facilitate sexual intercourse. The severe injury could hinder sexual intercourse particularly when the victim defecated. Therefore, the trial court could view the rape as a crime of opportunity that presented itself after the assault rather than as the object of the attack. The dissent reasoned that parts of the record showed Kloepper intended to employ the assault to accomplish the rape.

We already discussed, with regard to the statutory mens rea test, *State v. Latham*, 3 Wn. App. 2d 468 (2018). This court rejected the furtherance test in favor of the mens rea test and thereby ignored the teachings of *Edwards* and *Taylor*. Avery Latham confined his victim before strangling her. On appeal, Latham contended the trial court should have scored his kidnapping and attempted murder charges as the same criminal conduct because the kidnapping furthered the attempted murder. This court rejected the

argument based on the mens rea of the pertinent charging statutes. First degree kidnapping requires an intentional abduction with intent to facilitate the commission of a felony, while attempted first degree murder requires the specific intent to cause the death of another person. One can distinguish *Latham*, on the one hand, from *Taylor* and *Edwards*, on the other hand, in that Avery Latham abducted his victim in order to attempt the murder, while Jonathan Taylor and James Edwards assaulted the victims in order to further the abduction. Nevertheless, the furtherance test makes no such silly distinction between crimes.

*State v. Lessley*, 118 Wn.2d 773 (1992) also diverges from *State v. Edwards* and *State v. Taylor*. George and Janette Thomas, along with their daughter, Dorothy Olson, slept in the Thomases' Seattle home. Shortly before midnight, the sound of someone pounding on the front door awakened the trio. George Thomas investigated and discovered Dallas Lessley, his daughter's ex-boyfriend, outside the door. Thomas asked him to leave, but Lessley continued to pummel the door. He breached the door and burst into the house, while brandishing a revolver. Lessley demanded to see Olson. As George Thomas slipped from the house to call the police, Lessley ordered Olson and Janette Thomas into Dorothy's car. He told Olson to drive and forced Thomas to accompany them by threatening to shoot her if she refused. Lessley instructed Olson to drive to a house in Maple Valley. When they arrived, Lessley ordered Thomas out of the car at gunpoint. He then drove toward North Bend, stopped the car, assaulted Olson, and

48

threatened to shoot her. Lessley and Olson retrieved Janette Thomas at the Maple Valley

house and returned her home. Lessley left with Olson for another house in White Center,

where police arrested him.

Dallas Lessley pled guilty to four counts: count 1, burglary in the first degree;

count 2, kidnapping in the second degree for the abduction of Janette Thomas; count 3,

kidnapping in the first degree for the abduction of Olson with intent to facilitate an

assault; and count 4, intimidating a witness. At sentencing, Lessley argued counts 1 and

3, the burglary and the first degree kidnapping, encompassed the same criminal conduct

because he entered the Thomases' home intending to abduct Olson. Therefore, the two

crimes should have been counted as one in calculating his offender score and sentence.

The trial court disagreed, while reasoning that Lessley completed the burglary when

Lessley broke the front door and assaulted the Thomases and Olson. The kidnappings

occurred later. The Court of Appeals and the Supreme Court affirmed. *Lessley*

contradicts *Edwards* since the burglary furthered the kidnapping. *Lessley* abandoned the

furtherance principle.

We already outlined the facts in *State v. Vike*, 125 Wn.2d 407 (1994). Lasse Vike

possessed heroin and clonazepam at the same time on his person and pled guilty to two

counts of possession of a controlled substance. The court held the two crimes to involve

the same criminal intent for other reasons, but refused to apply the "furtherance test."

The test did not fit the situation unless the accused ingested both controlled substances for a synergistic effect.

In one decision, this court refused to apply the furtherance test because the second crime exceeded the action needed to commit the first crime. In *State v. Freeman*, 118 Wn. App. 365, 76 P.3d 732 (2003), *aff'd*, 153 Wn.2d 765, 108 P.3d 753 (2005), a jury found Michael Freeman guilty of assault and robbery. Freeman asked that his two convictions be treated as one, and the sentencing court denied the request. The Court of Appeals affirmed. Michael Freeman opened a car door, wherein Javon Pritchard sat. Freeman pulled a gun and demanded that Pritchard relinquish all of his money. When Pritchard hesitated, Freeman shot Pritchard. When Pritchard attempted to escape out of the other side of the car, Freeman followed and again told Pritchard to hand him all of his money or Freeman would shoot again. This time Pritchard complied. On appeal, Freeman argued that he only intended to rob Pritchard and he shot Pritchard only to further the robbery. This court agreed that the evidence sufficed to support Freeman's view of his criminal conduct. Nevertheless, the sentencing court found that Freeman's assault of Pritchard exceeded the steps necessary to rob Pritchard. This court held that the trial court did not abuse its discretion when finding that the shooting was a gratuitous, cold-blooded afterthought that went far beyond the force required to accomplish the robbery.

This court applied a corollary to the rule that crimes may be similar in intent if one crime furthers the commission of the second crime. The corollary declares that the two crimes are similar in intent if the underlying conduct of the offender furthers both crimes, not necessarily that one crime furthers the other crime. In *State v. Wright*, 183 Wn. App. 719 (2014), the State convicted Melody Wright of one count of first degree theft and ten counts of Medicaid fraud. Wright provided home care services for her mother and a Medicaid program paid for her services. She provided false time sheets for payment. This court reasoned that the crimes of theft and Medicaid fraud entailed the same intent because the same underlying conduct furthered both crimes. We rejected the crimes as constituting the same criminal conduct because Wright did not satisfy one of the other two elements.

*State v. Edwards*, 45 Wn. App. 378 (1986) also employed the phrase "intimately related" when discussing the sameness of criminal intent. This court wrote:

> [W]e find that Edwards' actions encompassed the same criminal conduct. The kidnapping of the supervisor and the assault on the paramedic were intimately related; there was no substantial change in the nature of the criminal objective.

*State v. Edwards*, 45 Wn. App. at 382. Other courts have employed the term "intimately related" as part of the test of same criminal intent. *State v. Dunaway*, 109 Wn.2d at 217 (1987); *State v. Adame*, 56 Wn. App. 803 (1990); *State v. Burns*, 114 Wn.2d at 318 (1990). Nevertheless, no decision grounds its ruling solely on an intimate relationship

51

between the two crimes. We do not find the phrase helpful because we do not know if the *Edwards* court employed concepts of time, location, or nature of conduct when characterizing the crimes as intimately related. No court has established parameters for an intimate relationship.

Some courts have held two crimes to entail the same criminal intent when the crimes occurred nearly simultaneously. *State v. Edwards*, 45 Wn. App. 378 (1986). Conversely, crimes do not entail the same criminal intent if the crimes were sequential, not simultaneous or continuous. *State v. Grantham*, 84 Wn. App. at 859 (1997). The crimes encompass distinct intents if the defendant completed one crime before committing the second crime. *State v. Lessley*, 118 Wn.2d 773 (1992). This test conflicts with the furtherance test. This test also overlaps, if not parallels, the same time and place element of same criminal conduct, such that the element of intent becomes redundant. We refer to this test as the simultaneous crime test.

We already presented the facts in *State v. Edwards*, 45 Wn. App. 378 (1986). When holding that the two crimes should be scored as one for the offender score, the *Edwards* court also emphasized that James Edwards committed the assault of the paramedic at the same time as the ongoing kidnapping.

We already presented the facts in *State v. Taylor*, 90 Wn. App. 312 (1998). In addition to reasoning that the kidnapping furthered the assault, the court held the two crimes to entail the same intent because Taylor committed the assault and kidnapping

simultaneously, such that the court could not find a new intent to commit a second crime after the completion of the first crime.

*State v. Tili*, 139 Wn.2d 107 (1999) illustrates the simultaneous crime test. Fonotaga Tili asserted, on appeal, that the trial court erred in concluding that three rape convictions were not part of the "same criminal conduct" as defined in former RCW 9.94A.400(1)(a) (1988). The three rape convictions resulted from three separate penetrations occurring over a two minute period. The Supreme Court agreed with Tili. Tili's three penetrations of the victim were continuous, uninterrupted, and committed within two minutes.

We previously outlined the facts in *State v. Taylor*, 90 Wn. App. 312 (1998), wherein the court applied the furtherance test. The court also found the crimes of assault and kidnapping to involve the same criminal intent because of the overlap in time with the two crimes. The assault and kidnapping happened at the same time and place and involved the same victim. The court could not find a new intent to commit a second crime after the completion of the first crime.

In *State v. Porter*, 133 Wn.2d 177 (1997), an undercover officer entered Teresa Porter's mother's home. At 11:49, Porter sold and delivered to the officer 1.25 grams of methamphetamine for $125. After completion of this transaction, the officer asked Porter if she had any marijuana. Porter then sold and delivered to the officer marijuana for the exchange of $40. Porter handed the officer the marijuana at 11:59. The State convicted

Porter of two counts of delivery of a controlled substance for this incident. The trial court refused Porter's request to score the two counts as one point for the offender score on the theory that the two sales involved the same criminal intent. The Supreme Court reversed. According to the court, the sale of two different drugs did not alone establish that Porter possessed a distinct criminal intent for each transaction. Instead, when the accused delivers or possesses two different substances simultaneously, the accused possesses a singular criminal intent for both controlled substance violations. Porter's criminal intent could not be segregated into distinct present and future intents to commit criminal activity. Instead, she intended to sell both drugs in the present as part of an ongoing transaction. Although the drugs were not sold simultaneously, they were sold immediately back to back.

One should not always expect a Washington court to find same criminal intent when the offender commits two crimes within a matter of minutes. We further previously presented the facts in *State v. Price*, wherein this court affirmed the trial court's conclusion that the shooting on Deschutes Parkway involved a distinct criminal intent from the shooting on Interstate 5. The court emphasized that Claude Price, after shooting on Deschutes Parkway, returned to his truck and decided to pursue Nakano and Hooper onto the interstate. Thus, time elapsed between the two shootings. We do not know how much time ticked, but assume the elapsed time did not exceed the ten minutes found to be nearly simultaneous in *State v. Porter*.

54

In *State v. Henderson*, 64 Wn. App. 339, 824 P.2d 492 (1992), the court applied the simultaneous occurrence test and found it unfulfilled. An informant bought drugs from Clyde Henderson in a park, left the park to meet with officers, and returned within the same hour to make a second buy from the defendant. This court treated the two sales as separate criminal conduct. Each sale was independently accomplished on its completion. There was no continuing sequence of conduct. Impliedly an hour's difference constituted a break of significant time. The earlier sale did not further the commission of the second sale and the sales were not part of a recognizable scheme or plan. The decision violates the mens rea and criminal objective tests.

In *State v. French*, 157 Wn.2d 593 (2006), the Supreme Court also found the simultaneous crime test unsatisfied. The State of Washington convicted James French of five counts of rape of his step-daughter. On appeal, French contended all five convictions entailed the same criminal conduct and should be scored as one crime for his offender score. The Supreme Court's opinion does not relate the facts of the rapes perhaps because the court focused on other assignments of error. The court held that the sentencing court did not abuse its discretion when denying French's request for a finding of same criminal conduct because the crimes involved discrete intents. The rapes occurred on several occasions throughout a five-year span. The rapes were sequential, not continuous or simultaneous.

Closely related to the intimately related and the nearly simultaneous crimes tests

of same criminal intent is whether the crimes were part of the same scheme or plan. *State*

*v. Vike*, 125 Wn.2d at 411 (1994); *State v. Calvert*, 79 Wn. App. at 578 (1995); *State v.*

*Rienks*, 46 Wn. App. 537, 538-40, 731 P.2d 1116 (1987), *superseded on remand*, noted

at 51 Wn. App. 1042 (1988). Along these lines, crimes may involve the same criminal

intent if they were part of a continuing, uninterrupted sequence of conduct. *State v.*

*Porter*, 133 Wn.2d at 186 (1997).

We previously narrated the facts in *State v. Williams*, 135 Wn.2d 365 (1998).

George Williams sold rock cocaine to two police informants in one controlled buy

operation. The court held the two convictions for delivery of controlled substances to

constitute the same criminal intent. Williams completed two deliveries in an

uninterrupted sequence as part of a single scheme to sell drugs.

We also previously outlined the facts in *State v. Rodriguez*, 61 Wn. App. 812

(1991). When law enforcement arrested Rodriguez, he possessed both cocaine and

heroin in his sock. A jury convicted Rodriguez of two counts of possession of a

controlled substance with intent to deliver. The court found the two crimes to invoke the

same criminal intent in part because Rodriguez possessed the two drugs as one scheme.

In *State v. Rienks*, 46 Wn. App. 537 (1987), the State convicted Edward Rienks

with one count each of first degree assault, first degree burglary, first degree robbery, and

second degree assault. The first three counts arose from an incident occurring on October

18, 1984, in the apartment of Kenny, and the fourth count, the second degree assault,

stemmed from an incident occurring in Kenny's apartment five days later. On October

18, Rienks and Mark Sedgemore went to Kenny's apartment to collect money, which he

owed to a third person. The pair knocked, and Jeffrey, Kenny's visitor, opened the door.

Rienks entered, shoved a small caliber pistol into Jeffrey's face, and pushed him against

the wall. When Rienks ascertained that Jeffrey was not Kenny, he searched the

apartment and found Kenny in one of the bedrooms. Rienks returned to the living room

five minutes later and took objects from a briefcase. While holding the gun, Rienks told

the people in the living room to remain still. Before leaving, he stated: "'I'll be back. Be

back for the rest.'" *State v. Rienks*, 46 Wn. App. at 539 (1987). On October 23, several

people were once again in Kenny's apartment when Rienks and Sedgemore knocked at

the door. Although the pair heard voices and shuffling inside, nobody opened the door.

Rienks called to the occupants in the apartment: "'I've got a message from the man. Pay

your bills.'" *State v. Rienks*, 46 Wn. App. at 539 (1987). He then shot a hole through the

door just below the lock. Carlotta, who was in the apartment, stood within a foot of the

bullet's path.

When sentencing Edward Rienks, the trial court determined that the October 18

burglary and robbery convictions encompassed the same criminal conduct and thereby

collapsed the two convictions into one for purposes of computing criminal history. The

court counted the two assault charges as separate crimes for the offender score. On

57

appeal, this court held that the burglary, robbery, and first degree assault, all occurring on

October 18, encompassed the same criminal conduct. The court reasoned that the three

offenses were committed as part of a recognizable scheme or plan and were committed

with no substantial change in the nature of the criminal objective of robbing Kenny.

Rienks's only purpose in assaulting Jeffrey was to get to Kenny. By so reasoning, the

court probably relied on subjective intent, rather than the objective intent needed to

convict on one of the various crimes. The court never addressed the similarity of intent

between the October 18 and October 23 crimes. The court was unconcerned about the

passage of five days.

The Washington Supreme Court may narrowly apply what constitutes one scheme.

In *State v. Burns*, 114 Wn.2d 314 (1990), Bruce Burns, while present in a van, delivered

cocaine to an undercover law enforcement by handing the cocaine to an associate, who

handed the cocaine to the officer standing nearby along Lake Union. A later search of

the van found Burns's wallet lying atop a vinyl case that contained plural plastic bags of

cocaine. A jury convicted Burns of delivery of cocaine for the act of indirectly handing

cocaine to an officer and possession of cocaine with the intent to deliver for the cocaine

remaining inside the van. At sentencing, Burns argued the two violations manifested the

same criminal intent and, therefore, should be counted as one crime instead of two for

purposes of calculating his offender score. Burns emphasized that both crimes involved

the intent to sell or deliver cocaine. He further maintained that the possession and

delivery of the cocaine was integrally related. The trial court might have denied Burns's

request by ruling that the intended deliveries would occur at different times and locations

and, assuming the purchasers could be considered victims, different victims.

Nevertheless, the trial court rejected Burns's request by reasoning that the first conviction

involved an intent to deliver to the officer, while the second conviction entailed an intent

to deliver cocaine to others in the future. Both the Court of Appeals and Supreme Court

affirmed the trial court decision. The Supreme Court stated that it gave deference to the

trial court's determination of what constitutes the same criminal conduct when assessing

the appropriate offender score. The decision suggests that the intent to deliver cocaine to

different persons does not involve the same intents. Such a rule may suggest that one's

intent to harm two distinct persons does not involve the same intent. The Supreme Court

never considered that Burns engaged in one scheme with regard to a limited amount of

cocaine stored in a van down by the lake.

We previously presented the facts in *State v. Price*, 103 Wn. App. 845 (2000),

wherein this court affirmed the trial court's conclusion that the shooting on Deschutes

Parkway involved a distinct criminal intent from the shooting on Interstate 5. Claude Price,

after shooting on Deschutes Parkway, returned to his vehicle and decided to pursue the

victims onto the interstate, where he fired his gun again. This court reasoned that the

method by which Price could have committed murder changed between the first and second

incidents. In the first incident, Price attempted to shoot the driver while standing next to the

vehicle. With the second incident, Price could have accomplished the murders by killing only the driver, scaring the driver, or by shooting a vital operating part of the car and causing an explosion or wreck. Thus, Price varied his scheme from the first shooting to the second shooting.

A variant of the same plan or scheme test and the sequential versus simultaneous timing test for criminal intent is the rule that, if the accused has an opportunity to reflect between crimes, the crimes do not possess the same intent. *State v. Grantham*, 84 Wn. App. at 859 (1997). When an offender has time to pause, reflect, and either cease their criminal activity or proceed to commit a further criminal act, and makes the decision to proceed, he or she has formed a new intent to commit the second act. *State v. Munoz-Rivera*, 190 Wn. App. at 889 (2015); *State v. Grantham*, 84 Wn. App. at 859 (1997). We refer to this test as the opportunity to reflect principle. This test modifies the rule that the relevant inquiry is to what extent the criminal intent changed from one crime to the next. Not only do we ask whether the accused formed a new intent, but we also ask whether the accused could have formed a new intent. One might wonder if someone is always reflecting and therefore could always modify his or her intent in a nanosecond such that entering the realm of possibilities and reflections negates the same criminal conduct statute.

We previously outlined the facts of *State v. Tili*, 139 Wn.2d 107 (1999), wherein the Supreme Court held three rape convictions to involve the same criminal intent. The

three rape convictions resulted from three separate penetrations occurring over a two minute period. *State v. Tili* asked whether Fonatag Tili objectively in fact changed his intent, as opposed to asking if he possibly could have changed intent. We surmise that Fonotaga Tili likely could have reflected on his action and determined to cease his criminal behavior before each subsequent penetration.

Although the *Grantham* rule may conflict with the *Tili* rule, the Supreme Court, in *State v. Tili*, 139 Wn.2d 107 (1999), distinguished *State v. Grantham*, 84 Wn. App. 854 (1997). In *Grantham*, the Court of Appeals affirmed the trial court's finding that two rapes were not the "same criminal conduct" for sentencing purposes. Evidence in *Grantham* supported a conclusion that the criminal episode had ended with the first rape. James Grantham, on completing the act of forced anal intercourse, had time and an opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act. After raping his victim the first time, Grantham stood over her and threatened her not to tell. He then began to argue with and physically assault the victim in order to force her to perform oral sex. According to the Supreme Court, Grantham was able to form a new criminal intent before his second criminal act because his crimes were sequential, not simultaneous or continuous.

In *State v. Mutch*, 171 Wn.2d 646 (2011), the trial court convicted Richard Henry Mutch of five counts of second degree rape and one count of second degree kidnapping.

On appeal, Mutch challenged the sentencing court's refusal to treat each rape conviction as involving the same criminal conduct. The Supreme Court affirmed.

In *State v. Mutch*, over the course of a night and through the next morning, Richard Mutch repeatedly raped J.L. in her home and under threat of force. J.L. testified to five distinct episodes of assault that each included oral sex and vaginal intercourse. Between the first four episodes of assault, Mutch ceased sexual violence, but forced J.L. to declare him king and concede she belonged to him. After the fourth episode, Mutch slept. When he awoke, he again forced J.L. to have sex in the same manner as the first four times.

In *State v. Mutch*, the Supreme Court compared *State v. Tili* with *State v. Grantham*. According to the high court, *Tili* critically differed from *Grantham* in that James Grantham had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act, so his crimes were sequential, not simultaneous or continuous. Mutch's behavior echoed Grantham's behavior. In contrast, Fonataga Tili's three counts of rape occurred over approximately two minutes, so the court reasoned that Tili likely did not form an independent criminal intent. Although the offender may possess the same criminal intent to rape from one crime to another, the intent may change. If one falls asleep between crimes, one may automatically form a new intent when awakening. Perhaps one has an opportunity to reflect during sleep.

62

We already mentioned *State v. Walden*, 69 Wn. App. 183 (1993), wherein John Walden forced the young victim to fellate him. He later unsuccessfully attempted to penetrate the victim's anus. This court considered rape and attempted rape to be the same criminal intent because they involved the same criminal purpose of sexual intercourse. *Walden* conflicts with *State v. Grantham*, 84 Wn. App. 854 (1997), wherein the court held two rapes to be separate crimes for purposes of criminal intent. The court, in *Walden*, never asked if John Walden encountered the opportunity to reflect between the oral sex and the attempted penetration.

In *State v. Palmer*, 95 Wn. App. 187 (1999), Kelia Palmer went to his ex-wife's home to visit his children. After the children retired to bed, Palmer refused to leave. The ex-wife sat on the couch in the living room, with Palmer in front of her on his knees. He rubbed her legs and told her that he wanted to reconcile. The ex-wife repeatedly asked Palmer to stop and, when he refused, she got up, opened the door, and asked him to leave. Palmer slammed the door, grabbed the ex-wife by the hair, and choked her. Palmer dragged the ex-wife to the couch by her hair, while still choking her. Palmer unbuttoned her jeans and struggled with her to take them off. Palmer ripped his ex-wife's underwear off and pried her legs open. She tried to escape, but Palmer choked and slammed her. Palmer performed oral sex on her. The ex-wife continued asking him to stop, while Palmer continued the contact. Palmer took off his clothes and told her to straddle him. A sobbing ex-wife told Palmer that she did not want to do that. Palmer

grabbed her by the hair, choked her, and then asked her if she was going to do as requested. Out of fear, the ex-wife straddled Palmer for ten minutes while Palmer vaginally raped her. Palmer twice moved her into a different position and reinserted his penis, finally ejaculating. The State convicted Palmer of one count for the oral rape and a second count for the vaginal rape.

On appeal, Kelia Palmer argued that the two crimes qualified as the same criminal conduct. The court deemed the critical question to be whether the two crimes entailed the same intent. The State argued that the two rapes, although close in time, were not simultaneous and therefore had separate intents. The Court of Appeals disagreed. The court distinguished *Grantham*, in that, in *Grantham,* the evidence supported a conclusion that the criminal episode had ended with the first rape, only to reoccur when a new argument erupted. In contrast, Palmer's violence toward his ex-wife was continuous and patterned. Palmer did nothing between the oral rape and the penile penetration unrelated to raping his victim. Perhaps Palmer had no chance to reflect between the two acts.

In *In re Personal Restraint of Rangel*, 99 Wn. App. 596 (2000), the court upheld the imposition of consecutive sentences for multiple assaults of the same victims because Julian Rangel had time to form a new criminal intent. Rangel, riding as a passenger in a car, fired at the victims' vehicle, which crashed. Rangel's car turned around, approached again, and he fired a second time at the other vehicle. The *Rangel* court held that Rangel was able to form a new criminal intent, because his acts were sequential, not

simultaneous or continuous. This analysis failed to recognize that each crime involved the objective intent to shoot at the victim and the two crimes occurred within minutes of one another. The court never asked what goal Julian Rangel sought by the shootings. This ruling violated the statutory mens rea principle and the objective criminal purpose principle.

We have repeatedly mentioned *State v. Price*, 103 Wn. App. 845 (2000), wherein this court affirmed the trial court's conclusion that the shooting on Deschutes Parkway involved a distinct criminal intent from the shooting on Interstate 5. In so ruling, the court observed that Claude Price, after shooting on Deschutes Parkway, returned to his truck and decided to pursue Nakano and Hooper onto the interstate. Thus, Price gained time to form a new criminal intent.

In the present case, the State did not convict Thomas Swarers with completed crimes of rape of a child. The State convicted Swarers of two counts of attempted rape. No Washington decision expressly addresses how a court should analyze same criminal conduct or same criminal intent in the context of an incomplete crime. Nevertheless, some Washington decisions entail the sentencing court addressing whether an attempted crime qualifies as having the same criminal intent as another crime, and all decisions treat attempted crimes as completed crimes.

In *State v. Walden*, 69 Wn. App. 183 (1993), the court considered forced oral sex and an attempt at anal sex to be the same criminal conduct for purposes of sentencing.

65

John Walden got further in his attempt to rape than Thomas Swarers did and, unlike Swarers, Walden inflicted pain on a real victim. Nevertheless, one could conclude, based on *State v. Walden*, that the court considers the incomplete crime as if completed for purposes of same criminal conduct.

In *State v. Deharo*, 136 Wn.2d 856 (1998), the State convicted Gustavo Deharo of conspiracy to deliver heroin and possession of heroin with intent to deliver. Thus, one crime was an incomplete crime. The Supreme Court held the two crimes to encompass the same criminal conduct. The court treated the conspiracy charge as if a delivery had occurred.

In *State v. Latham*, 3 Wn. App. 2d 468 (2018), this court equated the intent of attempted murder to be the same as murder. In *State v. Dunaway*, 109 Wn.2d 207 (1987), the court also treated crimes of attempted murder as completed crimes.

We must now ask whether the facts behind Thomas Swarers's two convictions of attempted rape of a child involve the same criminal intent. In answering the question, we review the ten tests announced by Washington courts.

The State convicted Thomas Swarers with identical crimes, rape of a child in the first degree. RCW 9A.44.073(1) declares:

> (1) A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator.

In turn, RCW 9A.44.010(1) defines "sexual intercourse" as:

> "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and
>
> (b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and
>
> (c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

We observe that rape of a child requires no finding of a particular mens rea.

We previously cited the rule that when one of the two crimes charged has no statutory mental element and the other one does, the two crimes' statutory intent are different. *State v. Ramirez Hernandez*, 95 Wn. App. at 485 (1999). No Washington decision addresses how to discern criminal intent when the defendant committed the same crime, but the crime lacks any statutory mental element. Regardless, the statutory mens rea test probably could not be applied in favor of Thomas Swarers.

When seeking to engage in sex with two young girls, Swarers sought oral sex with the youngest and vaginal sex with the oldest. Still, the crimes both contained the criminal objective of pedophiliac gratification. The criminal objective test could be applied in favor of Thomas Swarers.

If we viewed Thomas Swarers conduct in the prism of his attempting to commit rape of a child, rather than completing the crime, we would find both crimes to be

simultaneous in time and intimately related. All of his conduct leading to his arrest furthered both crimes. He engaged in the same electronic messages to facilitate both crimes. His preparations involved one scheme. He appeared at the trap house with objects to facilitate both intended crimes.

Nevertheless, the law directs us to analyze the crimes as if completed, not in their preparation stage. Neither crime furthered the other. Swarers could have engaged in sex with one underage girl without engaging in sexual conduct with the other girl. We do not know if Swarers intended to engage in sexual activity at the same time with both fictional girls. So we do not know whether the crimes would be simultaneous in time or intimately related. He could have completed a rape of one child, rested, and then engaged in an act with another girl. He would then have had the opportunity to reflect between each criminal act. He never asked for a threesome.

We are mindful that Swarers carries the burden of showing same criminal intent with regard to both convictions. Because many of the tests do not favor a ruling of same criminal intent and because the facts are incomplete, we conclude that Swarers likely would not have received a favorable ruling before the sentencing court.